THAYER v. McGEE.

---

## Charles Thayer v, Melville McGee, et al.

*Evidence: Judicial records.* The enrolled decree and the proceedings in a suit in Chancery, collected and attached together as provided by the statute, (*Comp. Laws*, §§ *3512, 3513,*) constitute the record of the cause. When any part of it is read in evidence by one party, every other part of it,—being properly on the files of the cause,—is also in evidence, and may be read by the opposite party.

*Practice in Chancery; Jurisdiction: Decree.* When the complainant and one or more defendants, to an ordinary foreclosure suit, by stipulation filed in the cause, adjust the controversy between themselves as to a portion of the mortgaged premises, so that such portion is not to be affected by the decree, the Court has no authority to make any decree affecting such defendants, or the premises thus released; and no lands not covered by the mortgage at the time of the decree, could, at least, as between the parties and those having notice of the facts, be conveyed or affected by the Master's deed.

*Decree in Chancery: Interpretation.* Stipulations between parties, or signed by the party to be bound, in a Chancery suit, and filed with the papers in the cause may be considered in determining the true interpretation of the decree.

*Mortgages: Interest of mortgagee: Assigned or released.* A quit claim deed by a mortgagee of premises covered by his mortgage may operate as an assignment,—*Niles v. Ransford, 1 Mich.,* 338—or as a release, at the option of the grantee; or if the interest of the grantor be such as would require a deed of bargain and sale to convey it as a reversion, then under the statute, ( *Comp. Laws,* § 2722), this effect will be given to it.

*Acts of Boards of Supervisors: Presumed to be for a valid purpose.* The acts of Boards of Supervisors in taking title to real estate, for the use of the county, will be presumed, *prima facie,* to be for a legitimate purpose, and to be in accordance with their official duty and the true interests of the county.

*Dedication: Reversion.* Whether any assignable interest remains in the grantor of premises dedicated to public uses under the act of April 12, 1827, which he could convey to any other than the party in possession holding the qualified or conditional fee;—Quære ?

*Heard April 7. Decided April 19.*

THAYER v. McGEE.

Error to Jackson Circuit.

This was an action of ejectment brought by Charles Thayer, to recover the southwest quarter of what was formerly known as the public square, in the city of Jackson.

The imperfection of the record brought up by the writ of error,—the character and extent of which appear from the opinion of the Court,—makes a full statement of the facts in controversy, on which the errors of the Court below are assigned, impossible.

*M. McKernon*, for Plaintiff in error.

I.  The Court below clearly erred in admitting the supposed stipulation in evidence and allowing the same to be read to the jury.  1.  This paper or writing never was signed by the plaintiff, or his Attorney or Solicitor, and consequently is not now, nor ever was, binding on him. *Circuit Court Rule 12. Chancery Court Rule 84.*  2. But even independent of the rules of Court it could not be used against him (under any circumstances) in any case except the one in which it is entitled, (and it is even doubtful if it could in that one) and then only when signed by the party or his Attorney. — *1 Cow. & Hill's Notes to Phil. Ev. Note 182; Brown v. Munger, 16 Vt., 12; Brittingham v. Stevens, 1 Hall, N. Y., 379; Harrison's Devisees v. Baker, 5 Litt., 250.*  3. Again, it could not be properly admitted in any case (even the one in which it is entitled) without other evidence connecting the plaintiff with it, which was not even offered in this case. 4. It may be claimed that this is only a trivial and not a vital error, but it becomes one of vital importance, since it is impossible to ascertain how far it influenced the verdict of the jury. 5. Again, it may be said that this supposed stipulation is mentioned in the decree or orders in the Chancery case, and hence admissible.  To this we reply that if any stipulation appears or is mentioned in any such orders or decrees, there

is no evidence showing that it is this pretended one adduced on the trial of this cause.

II. There was manifest error in admitting the deed of Packard, Cooper, Van Dorn and Moody in evidence.

It was a deed between other parties and has no connection whatever with the plaintiff and defendants in this action. As all the title the GRANTORS had to the premises was cut off by foreclosure of the mortgage, it is plain this deed was utterly worthless as a muniment or evidence of title.

III. The Court below erred in admitting the quit claim deed of the plaintiff in error, in evidence on behalf of the defendants in error.

1. The above deed is void on its face. It purports to be a deed of bargain and sale between an individual and the Board of Supervisors of Jackson County, for a consideration, but without defining the subject and use for which the land is to be used or appropriated. We claim the Supervisors ( as such ) had no power or authority to buy unless there was some special legislation authorizing them to do so. — *Rev. Stat. 1838; pages 39 & 40; Laws of 1842, page 22.* 2. Again, if the Supervisors had power to buy without authority of law, they could, on behalf of the County, buy any or all the real estate in it, and run the County in debt for the payment, and raise a tax as well upon personal as real property to pay for it, and become general dealers in goods, wares and merchandise.

IV. The Court below erred in charging the jury that the QUIT CLAIM DEED given by the plaintiff was a bar to this action.

1. The covenants contained in the deed do not bind or run with the land, and the only remedy of the defendants ( if any ) is by an action for the breach of such covenants. — *Collins v. Plummer, 1 P. Wm's., 104; 1 Shep. Touch., 164, [ Ed. of 1808 ].* 2. The deed in question is void from the fact that if it conveys anything, it only conveys a bare

possibility of an interest which is uncertain and not grant-able.— *1 Shep. Touch. 239.* [*Ed. of 1808*]. 3. Again, it is void because it is evident that it purports to convey an interest (if there was any) that was wholly in suspense, and there-fore was not grantable. 4. So this deed was and is abso-lutely void, since the plaintiff not being in possession nor having a right to the possession of the premises in question, he could not make a valid conveyance of the same. — *1 Shep. Touch. 243,* [ *Ed. of 1808*]. 5. The only way in which this deed could convey any title to the premises, would be by coupling it with a conveyance or assignment of the mortgage debt or a portion of the same provided it could be apportioned. Otherwise it can convey nothing. — *Furbush v. Goodwin, 5 Foster* [ *N. H*]. *425 ; Ellison v. Dan-iels, 11 N. H., 274; Aymar v. Bill, 5 John. Ch. 570 ; Lamprey v. Nudd, 9 Foster,* [ *N. H*]. *299 ; Weeks v. Eaton, 15 N. H., 145 ; Hobson v. Roles, 20 N. H., 41 ; Huntington v. Smith, 4 Conn., 235 ; Blair v. Bass, 4 Blackf. 539 ; Martin v. McReynolds, 6 Mich. 70.* 6. It may be urged that as the plaintiff subsequently acquired the title to the premises in question by virtue of the decree and Master's deed such title should accrue to his grantees and those claiming under them. But we submit that such can only be the case where the conveyance is made by a deed con-taining a covenant of warranty. — *Somes v. Skinner, 3 Pick., 60 ; White v. Patten, 24 Pick., 324.*

*W. K. Gibson and Johnson & Higby,* for defendants in error.

Whatever right the plaintiff in error has to the premises in question, is derived solely through the foreclosure of the mortgage from Moody to Van Dorn, and the Master's deed upon the sale of the mortgaged premises.

I. At the time of the execution and delivery of the quit claim deed from plaintiff in error to the county of Jackson, the common law doctrine respecting the rights of mortga-

gor and mortgagee prevailed in this State. *Stevens v. Brown, Wal. Ch., 41; Mundy v. Munroe, 1 Mich. 68; Crippin v. Morrison, 13 Mich. 23; Comp. Laws, Sec. 4614.*

II. The quit claim deed of plaintiff in error was operative, either as a release of so much of the mortgaged premises as the deed contained, or was an assignment of the mortgage *pro tanto;* and whether a release or an assignment, depends upon the intention and object to be accomplished. *1 Washburn on Real Estate, 520; Jerome v. Seymour, Har. Ch., 357; Hunt v. Hunt, 14 Pick. 374-380; Freeman v. McGraw, 15 Pick. 82; Murdock v. Chapman, 9 Grey, 157; Russell v. Coffin, 8 Pick. 143; Ruggles v. Boston, 13 Grey, 506.*

III. That such deed was intended by plaintiff in error as a *release,* is clearly shown by the following facts:

1. It was given, during foreclosure of the premises in question, by Thayer, the complainant, to the county of Jackson defendant, and was recorded the same day on which a stipulation was made in the cause between the parties to the deed, in which stipulation the object and intent of the deed is defined.

2. Thayer not only treated such deed as a release in the order *pro confesso* entered in said cause, but also in the decree and Master's deed, by adopting a different description of the premises from that in the mortgage, and consistent with the idea of a previous release by him.

IV. Thayer's deed should receive a construction consistent with the intent and design of the grantor, especially where a different construction would aid in the perpetration of a fraud. *14 Pick. 374; Proctor v. Thrall, 22, 262; 1 Green Ch. 145.*

V. In construing deeds and other instruments, the situation of the parties, the subject matter of the transaction, and the attending circumstances, are all proper matters to be considered by the court, since the object is to carry into effect the intention of the parties. — *Paddock v.*

*Pardee, 1 Mich., 421; Adams v. Frothingham, 3 Mass. 352.* The same rule of construction is applicable to the decree and Master's deed.

VI. The term "Block" has not a strict legal significa-tion. It is not used in the statute, nor are blocks required to be designated on town plats.— *1 Vol. Comp. Laws, Sec. 1133.*

VII. Such being the case, the Court will go outside the deed to determine the true meaning and construction of the language used.— *1 New York,* [ *Comstock* ], *96 ; 1 Johnson's Cases, 91, 399 ; 8 Mass. Rep., 214.*

VIII. The Court properly charged the jury that the plaintiff in error would be estopped, in this particular case, by his quit claim deed. The question in this case is not whether a quit claim deed estops the grantor from setting up a subsequently acquired title of a different character, or from a different source, but whether the plaintiff in error, having undertaken to release by quit claim deed the prem-ises in question, pending foreclosure, to a party defendant thereto, and having thereby induced such defendant to re-tire from the case and withhold his defense, can now set up against such defendant a title acquired solely through such foreclosure.

IX. The quit claim deed was given as a release of the mortgaged premises, and by both parties to it in a cotem-poraneous stipulation, solemnly affirmed to be a release, coupled also, with a promise of the grantor not to take a decree against the released premises, acted upon as a release in the order *pro confesso,* and it would violate the plainest rules of law to allow the grantor now to deny either the intent or the effect of such deed in a suit against the grantee.—*8 Wend. 483 ; 5 New Hamp., 453 ; 4 Sandford, 361; 28 Maine, 525 ; 20 Conn., 563.*

X. A grantor and his heirs are estopped by the grantor's deed conveying land bounded on streets to deny that there

are streets to the extent of the land bounded thereby. — *17 Mass., 413 ; 2 Grey, 271.*

XI. The statute of 1827, chapter 2d, sections 3 and 4, and subsequent statutes, confer all necessary power upon the county to take and hold lands, however conveyed; and aside from the statute, the power existed at common law.

CHRISTIANCY, J.

This was an action of ejectment brought by the plaintiff in error in the Circuit Court for the County of Jackson, to recover a piece of land in the city of Jackson, formerly a part of the public square, and situate upon the west half of the northeast quarter of section three, in township three south, of range one west, originally purchased from the United States by Benjamin H. Packard, by him conveyed to George B. Cooper, by him to Charles H. Van Dorn, and by him to William J. Moody, the last conveyance bearing date January 16, 1835. Moody gave back to Van Dorn, a mortgage of the same date, which, after describing an eighty acre lot, excepted and reserved certain lots in the (then) village of Jacksonburg (now being the city of Jackson), described by numbers and blocks, but not excepting that portion of the public square here in question, unless the latter was included in lot one, of block one south, of range one west, on said village plat—a question which from the view we have taken of the case, it is not necessary to discuss.

This mortgage would seem to have become the property of the plaintiff in some way not shown by the record, and to have been foreclosed by the plaintiff in the (old) Court of Chancery for the Second Circuit, in a cause wherein the plaintiff was complainant, and William J. Moody and the Board of Supervisors of the County of Jackson, and many others were defendants, the bill having been filed January 15, 1845, and taken as confessed in Au-

gust, 1846. The date of the final decree (for reasons presently to be stated,) does not appear. Under a sale on this foreclosure plaintiff claims title.

We have said this mortgage would seem to have been thus foreclosed, because the counsel for both parties assumed this upon the argument, and the course of the defense, as shown by the bill of exceptions, furnishes an inference to this effect. But the record does not in its present shape show this fact. The bill of exceptions, without anything to show that this was the mortgage involved in that suit, and without any previous or subsequent explanations of the suit or its objects, states only that "the plaintiff then offered in evidence so much of the record, by exemplification thereof, of the enrolled decree *in a foreclosure suit* commenced by filing a bill in Chancery, in the Second Circuit for the said state, on the 15th day of January, 1845, wherein Charles Thayer, the plaintiff in this action was complainant, and William J. Moody and many others, including the Board of Supervisors of the County of Jackson were respondents; to wit: the bill of complaint, return of subpœna, final decree, and order of sale; which bill of complaint, so far as read in evidence to the jury, and decree and order of sale are hereto annexed, marked respectively 'A & B.'

"The plaintiff, further to maintain said issue on his part, offered in evidence (contained in said exemplification) the Master's report of sale in pursuance of said decree, the order of confirmation, the deed of Samuel Higby, the Master making the sale, to the plaintiff in this action, was produced in evidence, which said Master's deed was made and dated the first day of August, in the year 1847, and duly recorded."

But the exhibits referred to are not attached, and do not appear in the record before us. Error was assigned upon the record as it is; and though the omission was specially called to the attention of counsel for plaintiff in error, no motion was made to have it sent back for correc-

tion or amendment. It does not, therefore, appear that there was any record offered in evidence in the Court below, of a suit for the foreclosure of *this* mortgage, nor what was the decree, nor whether the premises in question were included in the decree, or sold or deeded by the Master.

But assuming, ( what seems to have been conceded on the argument ), that the suit referred to was for the foreclosure of this mortgage by an ordinary foreclosure bill, and that it was thus foreclosed,—without, however, assuming that the decree covered the premises here in question, which was denied by the counsel for the defendant in error, and of which the record furnishes no proof,—we proceed to dispose of the case upon this hypothesis, in connection with the facts which do appear upon the record:

Long prior to the mortgage in 1830, and while this eighty acre lot belonged to Benjamin H. Packard, he, in conjunction with other owners of adjoining lands, duly made, acknowledged and recorded the plat of the ( then ) village of Jacksonburgh, (in the now city of Jackson), on which plat, at the intersection of Main and Jackson streets, was located a piece of ground designated as a public square, the southwest corner of which ( in substantially a square form), south of Main street and west of Jackson street, is the land claimed in the declaration.

That the land in question was thus dedicated to the public use as a public square, and accepted and used as such, does not appear to be questioned. But the theory of the plaintiff's claim is, that all the conveyances from Packard down to the mortgagor, conveyed the interest in the land which remained in Packard after the dedication, which he claims was the naked fee or possible reversion, when the land should cease to be used by the public for the purposes of the dedication,—that the mortgage covered this interest, and that he obtained the same by the purchase under the foreclosure sale; that some time after he had thus obtained this interest, the public authorities, by abandonment and non-

user, and the appropriation of the land to purposes foreign
to the dedication, extinguished the public right or easement,
and that the land has reverted to him in fee simple, and
that he is entitled to recover the same in this action, dis-
charged of the public easement.

And for the purpose of showing these facts, he intro-
duced the exemplification of a record of the Circuit Court
for the County of Jackson, showing a petition filed by the
Board of Supervisors, May 5th, 1850, to vacate a large por-
tion of said south west portion of the public square (the
premises in question), and an order made by said Court in
pursuance thereof, on the 12th of May, 1851, granting the
petition, and ordering a portion of the village plat to be
vacated and set aside, including most of the premises in
question, (and which, so far as any question arises here,
may be treated as the whole); and introduced proof of a
leasing of a part of the premises, by the supervisors in 1865
to one Mitchell and others.

That these proceedings were equivalent to an abandon-
ment of the public right or use given by the dedication, if
the County or the Board had not, in the mean time, ob-
tained the reversion, does not seem to have been denied.
But the defendants claimed on the trial, that the super-
visors had obtained whatever reversion or right remained in
Packard after the dedication, and that they became the
owners of the fee, long before the acts of abandonment
shown by the plaintiff, and prior to the decree in the fore-
closure suit. And, for the purpose of defeating the plain-
tiff's claim, and to show title in themselves, the defendants
introduced in evidence, under objection from the plaintiff,
a quit claim deed from the plaintiff himself, to the Board
of Supervisors, dated July 13th, 1846, during the pendency
of the foreclosure bill, (and prior to the decree or the order
*pro confesso,* hereafter to be noticed), purporting to remise,
release, and forever quit claim to said Board and their suc-
cessors in office, for the use of the County, the premises in

question; also, under like objection, a like deed to the County Commissioners of said County, dated December 27th, 1838, executed by said Packard, Cooper, Van Dorn and Moody. They also introduced under objection, from the enrolled decree and proceedings, in the foreclosure suit, a stipulation, signed by the solicitor for the Board of Supervisors, (who were defendants in said Chancery cause), reciting that such release and quit claim had been given by complainant to them, and consenting that complainant might take such decree as he was entitled to without notice to them or their solicitor, provided he should not take a decree for the sale of the premises so released to the Board. They also introduced from the same enrolled decree and proceedings, an order taking the bill as confessed; which order, so far as the supervisors were concerned, purported to be based upon a stipulation signed by their solicitor.

The first error assigned is the admission of the above stipulation. But as we deem this entirely immaterial, we shall not notice it here further than to say, that the stipulation was one, which, in its nature, required only the signature of the defendant's solicitor, as there was no undertaking on the part of complainant, and that the plaintiff having himself introduced the enrollment of the decree and proceedings, which, by the statute, (*Comp. L. Sec. 3512 and 3513*) constituted collectively *the record*, of the Chancery cause, and the plaintiff having read a portion of the papers constituting that record, the whole was in evidence, and the defendants had the right to read any other portion, and *that*, without any further proof of such papers; as it was a part of the same record, (unless it might be some paper, which in its nature could not properly constitute a part of the files in the cause, or unless shown to have been wrongfully filed, if that were competent). The defendants had a right to use any such evidence for the purpose of explaining or construing the decree, or to show what were the grounds or even the jurisdiction upon

which it was founded; and the plaintiff certainly cannot object to the stipulation on the ground that it tends to impeach the decree by showing that the premises in question, were not included in the decree, when he does not show us they were included, nor exhibit the decree by which we can ascertain it; and this fact is disputed by the defendants.

The second exception on which error is assigned, was to the admission of the deed executed by the plaintiff to the supervisors, dated July, 1846, and to that executed by Packard and others to the County Commissioners. It is, for reasons which will presently appear, only necessary to consider the objection as relates to the plaintiff's own deed,—though the ground of objection as assigned was the same as to all.

This objection was expressly made on the sole ground " that the deed appeared to be a deed of bargain and sale and the County of Jackson at the date of the delivery of the same, could not take by purchase or bargain and sale under the statute of Michigan."

We are not sure that we have been able to divine the precise meaning intended to be conveyed by this objection. The deed does not, upon its face, purport to be a deed of bargain and sale. Its operative words are " remise, release, and forever quit claim." If the objection was intended to assert that the statute declaring that " a deed of quit claim and release of the form in common use, shall be sufficient to pass all the estate which the grantor could lawfully convey by a deed of bargain and sale," necessarily converts it into a deed of bargain and sale; the objection is founded upon a misapprehension of the statute. It has no effect to convert a deed of release and quit claim into one of bargain and sale, except in cases, when, without the statute the latter would be the appropriate form and operation of the conveyance. When the circumstances are such that the instrument, to effect the apparent purposes of the parties, must operate as a release, or when that is the appropriate form to be adopted, the statute has no effect, but leaves the deed to operate according to its terms.

Courts are liberal in construing deeds so as to give them effect, *ut magis valeat quam pereat,* and if they cannot operate as that species of conveyance indicated by the letter, they will generally be held to operate in some other form, so as to effectuate the object, which, from the whole instrument and the circumstances and condition of the title, the parties appear to have intended: "For in these later times the judges have gone farther than formerly, and have had more consideration for the substance, to wit: the passing of the estate according to the intention of the parties, than the shadow, to wit: the manner of passing it." *Osman v. Sheaf,* 3 *Lev.,* 370, *cited in Doe demise Lewis v. Davis,* 2 *M. & W.,* 508 ; *per Maule J. Borradaile v. Hunter,* 5 *M. & G.,* p. 653 ; *per Willes, C. J. Smith v. Packhurst,* 3 *Atkins,* 136 ; *Cholmondeley v. Clinton,* 2 *B. & Ald.,* 637 ; 2 *Williams Saund, 96, A. Note (1)* The maxim " *Quando res non valet, ut ago, valeat quantum valere potest,*" is liberally applied in such cases ; and the instances are very numerous where deeds in one form have been made to operate in another to effect the intention of the parties, and when a deed may inure in different ways, the person to whom it is made has his election, which way to take it. See *4 Greenleaf's Cruise, 248 to 251 ; 3 Washb. R. Pr. (3d Ed.) 309, 310, id. 330, 331.* And in pleading, upon the principle that the deed must be described according to its legal effect; a deed, for instance, which by its words purports to " give and grant," must sometimes be alleged as a release, &c. *1 Chitty's Pl., 334, 335.*

It is to be remembered that the plaintiff at the time of executing this deed was, upon his own theory of the case, but the mortgagee of a reversion, seeking to foreclose his mortgage ; the supervisors representing the public, being in possession of the land and vested of a freehold interest in the easement, with the right to hold it in perpetuity for the purposes of the dedication ; and that no abandonment or *non user* had then taken place. And, for the purpose of conveying or extinguishing his interest in a part only of

the mortgaged premises, by a deed to these parties then in possession, a release was the appropriate instrument, and this deed is exactly in the usual and technical form of a common law release, appropriate to such a case. *4 Greenleaf's Cruise, 78. § 20 ; id. p. 82, § 39.*

Had the plaintiff's deed been made to a stranger, or one not in possession, and having no estate in the land, and had it covered the whole mortgaged premises it would have conveyed all his interests as mortgagee, operating in that case as an assignment, (*Niles v. Ransford, 1 Mich., 338*), and a like deed to the supervisors in this case, of 'the whole mortgaged premises, might perhaps have operated as an assignment, as to all the residue of the premises, and as to the portion in which they already had an estate in possession, as an assignment or release at their option. But if the plaintiff had at the time such an interest as required a deed of bargain and sale to convey it as a reversion, then under the statute, this effect must be given to it.

But it was further urged that the Board of Supervisors had no power to purchase on behalf of the county any greater interest in this land than that already vested in the county, and that if they had such power they might buy all the real estate in the county, and impose taxes to pay for it, and thus become general dealers in real estate.

We are unable to see the force of this objection in the present case. Counties often have need of real estate for public buildings, county offices and poor houses, and other purposes for which it would be highly judicious, at least, to obtain and hold the absolute fee simple. The supervisors, at that time as now, had full power to erect such buildings, to borrow money for that purpose, to make such orders respecting the corporate property of the county as they might deem expedient; to represent the county, to have the care of the county property, and the management of the business and concerns of the county, in all cases not otherwise provided for; to raise the money necessary to defray the county

charges, and the expenses incident to the execution of such authority.—*Rev. Stat. 1838, pp. 39 and 40; Laws of 1842, p. 22.*

If this deed could be held void for any abuse of these powers, such abuse must, at least, be first affirmatively shown. It cannot be presumed from the one dollar consideration mentioned in a release, which converts an easement in this small parcel of land into a full title in fee simple. (*Regents, &c. v. Detroit Young Men's Society, 12 Mich., 138.*) We are bound, on the other hand, to presume that the title was wanted for a legitimate purpose, and that the supervisors acted in accordance with their official duty and the true interests of the county.

It is manifest then, that all the interest of the plaintiff, (if any he had,) in the premises in question, had been conveyed or released, and vested in the supervisors before any decree in the foreclosure suit, and before the order *pro confesso* upon which it was based. And the complainant (plaintiff) having no further interest, as mortgagee or otherwise, in this portion of the mortgaged premises; and the supervisors, as defendants, having no further interest in or concern with that suit; we are to enquire what, if any, effect the subsequent proceedings and decree, and sale in the foreclosure suit, could have as to the supervisors who had been defendants, and the premises thus released.

Neither the complainant nor those defendants having any further interest, or subject in controversy between them to be litigated, we think the effect of the release was equivalent to a dismissal of the bill as to the supervisors. And as the fact of the release was brought to the attention of the Court by the stipulation filed in the cause, and the order *pro confesso* upon which the decree was entered; the Court of Chancery, under an ordinary foreclosure bill (which this must be inferred, and is stated to have been,) had no authority to make any decree affecting those defendants or the premises thus released.

THAYER *v.* McGEE.

The decree and sale in an ordinary foreclosure suit must rest wholly upon the mortgage, and no greater interest can be sold than was covered by it; and no lands, not covered by the mortgage at the time of the decree could, at least, as between the parties and those affected by notices of the facts, be conveyed or affected by the master's deed, though both the decree and the deed should inadvertently include them.

It may be true, that by filing a supplemental bill after the release was executed, setting up its invalidity, that question might be put in issue, and in this way the release set aside. But nothing of this kind is pretended, or that there was any ground for setting it aside, or that this was anything but an ordinary foreclosure bill. And neither the bill nor the decree being shown, we cannot presume any supplemental bill, nor can we presume in the face of the release, that these premises were included in the decree. Falsehood and wrong are not to be presumed.

Putting the case, therefore, in the most favorable aspect for the plaintiff that the record will warrant, and giving him the benefit of all the admissions on the argument of facts which ought to have been made to appear upon the record; the release of the plaintiff having been shown, and no evidence given or offered to controvert its execution or impeach its validity; no ruling or charge of the court, however erroneous could have prejudiced the plaintiff's case; since, upon any ruling or charge the Court could have given, the jury must have properly found against him. And had they found otherwise, it would have been the duty of the Court, at once, to set aside the verdict. It is therefore quite unnecessary to consider any of the other errors assigned.

It is proper to say that there is another theory of the effect of the dedication upon which it might have been more proper, had it been so argued, to consider the case. By the act of April 12, 1827, (*Laws of 1827, pp. 278*

*and 279*), in force at the time of the dedication, the fee vested in the County in trust, for the public uses and purposes of such dedication "and for *no other use or purpose whatever.*"

This might not be held to be a fee simple absolute. But if, 1st—a base, limited or determinable fee; (*2 Bl. Com. 109; 1 Inst. 27 (a); 1 Cruise by Greenleaf, title 1, sec. 71 to 76 ; State v. Brown 3 Dutcher (N. J.), 13; 4 Kent's Com. 9*); or, 2nd—a fee defeasible upon a condition subsequent ; (*4 Kent's Com. 125, 126 ; Nicoll v. N. Y. & Erie R. R. 2 Kernan, 121*); the question might arise whether, after · the dedication by Packard, any assignable interest remained in him which he could sell and convey to other parties than those in possession, holding the qualified or base fee, or the conditional fee. ( *2 Greenleaf's Cruise Title 17*, § *6 ; id. title 13, ch. 2; 3 Wasb. R. Pr. 303; 3 id. 78, 79—2 id. 687.*)

If no such assignable interest or reversion remained in Packard after the dedication, then no interest in the public square passed to Cooper, Van Dorn or Moody, and there was nothing in this portion of the premises for the mortgage to operate upon. And the deed of all those parties to the County Commissioners may have vested in them a perfect title in fee, unaffected by the mortgage.

If, on the other hand, there remained in Packard a reversion which he could convey to others, and which, in that event, went to his grantees, and became subject to the mortgage, according to the plaintiff's theory; then the release of the plaintiff vested in the supervisors a full title, clear from the mortgage incumbrance as already noticed.

We have considered the case on the theory most favorable to the plaintiff, and express no opinion upon the effect of the other, except to say that it could not help the plaintiff's case.

The judgment must, therefore, be affirmed with costs.

The other Justices concurred.