## Charles W. Grant v. Elias W. Smith and another.

*Trover: Timber: Title to lands: State swamp lands: State patent: Evidence.* In an action of trover for the conversion of timber, where the question of title to the lands upon which the timber was cut is involved, a patent by the governor, under the great seal of the state, of state swamp lands, is admissible in evidence to prove title in the patentee, without proof of the title of the state or the authority of the governor to issue the patent.

*Trover: Right of action: Assignment: Assignee.* The right of action for a tort of this description is assignable, under our statute, and enforceable by suit in the name of the assignee.—*Final v. Backus, 18 Mich., 218.*

*Evidence: Good faith: Damages.* Evidence, in such an action, that the defendant purchased the lands for a consideration of five hundred dollars, of one who claimed to have a tax-title, before he cut the timber, to show good faith, could serve only to reduce the damages, and is irrelevant in any other view; and where, if admitted, it ought not to have changed the result in this regard, as where punitory damages are not sought or given, its rejection will not be considered on error.

*Trover: Timber: Measure of damages.* In an action of trover against one who has wrongfully cut pine timber on the lands of the plaintiff, and removed the logs to his mill for manufacture, the measure of damages is not limited to the

26 MICH.—26.

value of the logs at the stumps; where the value at the mill to which the defendant has removed them for his own advantage, exceeds such stumpage, that value is the proper measure of damages.—*Final v. Backus, 18 Mich., 218 ; Symes v. Oliver, 13 Mich., 9.*

*Heard October 16 and 17. Decided November 23.*

Error to Saginaw Circuit.

*Sutherland & Wheeler,* for plaintiff in error.

*Gaylord & Hanchett,* for defendants in error, on the admissibility of the patent in evidence, cited : *Lester's Land Laws, pp. 169, 285 ; Sess. L., 1851, p. 322 ; Sess. L., 1853, p. 116; Sess. L., 1857, p. 234; Sess. L., 1858, p. 169 ; Dart v. Hercules, 34 Ill., 395 ; Branch v. Mitchell, 24 Ark., 431; Fremont and Mills Counties v. Burlington & Mo. R. R. Co., 22 Iowa, 91 ; Same case, 9 Wall., 89 ; Railroad Company v. Smith, 9 Wall., 95 ; Allison v. Halfacre, 11 Iowa, 96 ; Ballou v. Watson & O'Brien, 20 Mich., 304; Patents for California Land Claims, 12 Op. Attorney General, 251 ; Waterman v. Smith, 13 Cal., 419 ; Goodlet v. Smithson, 5 Port. (Ala.), 243 ; Clark v. Hall, 19 Mich., 356 ; Minter v. Crommelin, 18 How., 87 ; Polk v. Wendell, 9 Cranch, 87 ; Newson v. Pryor, 7 Wheat., 7 ; Cary v. Whitney, 48 Maine, 516 ; Surget v. Doe, 24 Miss., 118 ; United States v. Arredondo, 6 Pet., 691, 727, 728, 729 ; Trustees v. Allen, 21 Ill., 120 ; People v. Livingston, 8 Barb., 253 ; Rice v. Harrell, 24 Ark., 402.*

GRAVES, J.

This was an action of trover by Smith and Wilson against Grant to recover damage for the conversion of a large quantity of pine timber taken in 1870 from the southwest

quarter of the southeast quarter of section two, in township thirteen north, of range two west, in this state.

The jury returned a verdict for the plaintiffs below, for four thousand two hundred and forty-four dollars and seventy-seven cents, and the defendant below now asks a review by this court, of several of the rulings made during the trial. The first question relates to the validity of the evidence of the title of Smith and Wilson to the property alleged to have been converted.

That evidence consisted, *first*, of a patent by the governor in August, 1858, to Abel A. Brockway, of the land on which the timber was cut; and *second*, of an assignment of the right of action by Brockway to Smith and Wilson in October, 1870, which was subsequent to the conversion.

This assignment was in a contract made by Brockway with Smith and Wilson for the sale of the land. The assignment clause reads as follows: " Said first party hereby sells, assigns, and sets over unto said second parties, *all rights of action which he now has by reason of any trespass having been committed on the lands herein described, or any part thereof*, and *hereby* authorizes said second parties to sue and recover therefor, but at their own cost and expense."

The patent indicated by its statements that it was issued for swamp land, and recited that the patentee had paid for the land pursuant to the conditions of sale and the laws of the state, and referred to certificates of the proper officers on file in the office of the secretary of state.

It was objected that it did not appear that the state had any title at the emanation of the patent, or that the governor was authorized to issue the patent. On the first glance this objection appeared somewhat plausible, but exam-

ination and reflection have satisfied me that it is wholly untenable.

The law has provided for giving patents to swamp land buyers as the evidence of their title, and has provided for placing in their hands no other evidence of it. It has indicated no design to put the holders of such lands on any more unfavorable footing as to presumptive evidence of their ownership than the holders of other lands under state patents. And in view of these considerations, it seems to me little less than absurd to say that, when the holder of an apparently regular and formal patent, purporting to have been given for swamp land, offers it in evidence of his title against a wrong doer, he is to be told that the law after all regards it as no evidence of title by itself.

He presents his patent. It bears the great seal. It possesses all the features which can recommend it to judicial credence. It purports to convey swamp land. According to the objection, however, he is to be told that the law assumes that it bears a lie upon its face, and must, on that assumption, be ignominiously excluded. The authorities, I think, afford no warrant for such a result, and I can discover no sound reasoning for it.—*Thayer v. McGee, 20 Mich., 195; Hall v. Kellogg, 16 Mich., 135 ; McCormick v. Bay City, 23 Mich., 457.* In the case of the *Railroad Company v. Smith, 9 Wall., 95,* the supreme court of the United States decided that the act of congress granting swamp lands, by its own force vested the title in the respective states in which the lands are situated, and that the lands were subject to disposal by the states without any action whatever by the department of the interior.

Such being the settled law on that point, the citations from the statutes and decisions, by the counsel for defendants in error, support the view which has been expressed,

and show that the patent was sufficient to warrant the presumption, at least, that all prerequisites had been duly and legally complied with, and that it gave title to the patentee.

The patent was, therefore, properly admitted as evidence of title in the patentee, from whom the plaintiffs below claimed. In addition to the cases cited in the brief of counsel for defendants in error, the following favor the same view: *Wallace v. Maxwell, 1 J. J. Marshall, 447, 450, 451; Woodson v. Buford, 7 Mon., 418; Hickman v. Boffman, Hardin R., 362; Brown v. Galloway, 1 Pet., Cir. C. R., 291; James v. Betz, 2 Binn., 12; Thompson v. Hauser, 2 Const'l Court R. (S. C.), 356; Williams v. Sheldon, 10 Wend., 654; Patterson v. Winn, 5 Pet., 241; Boatner v. Ventress, 8 Mart., Lou. R. (N. S.,) 644; Whitmire v. Napier, 4 Sergt. & R., 290; Downing v. Gallagher, 2 Sergt. & R., 455; People v. Livingston, 8 Barb., 253; People v. Mauran, 5 Denio, 389; Brady v. Begun, 36 Barb., 533; De Camp v. Eveland, 19 Barb., 81.*

The assignment was properly admitted. *Final v. Backus, 18 Mich., 218,* is decisive on this point. We there held that the right of action for a tort of this description is assignable by our law and enforceable by suit in the name of the assignee. And the form of the assignment in question will admit of no construction which will exclude it from the operation of that decision.

The next question arises upon the exclusion of evidence offered by the defendant below, that one Sias claimed to have acquired a tax-title to the land, and that Grant took a deed from him on a consideration of some four or five hundred dollars before the timber was cut. This evidence was tendered to show that Grant, in cutting the timber, honestly supposed that he was the owner of the land, and acted in perfect good faith.

This evidence, if it had been admitted, could have served

only to reduce the damages. It was irrelevant in any other view, and we are unable to see that it ought to have changed the result if it had been allowed. The logs were cut and removed to Grant's mill, and the question as to the measure or amount of damage, was merely whether the value should be estimated at the stumps where the logs were cut, or at some other place to which Grant had removed them for his advantage. There was no question whatever, as to the right to recover punitory damages, and none were given. Evidence of the good faith of the defendant was not therefore needed to exclude or reduce such damages; and the circumstance that the logs were salable at a considerably higher price at the place to which the defendant took them, than at the place where they were cut, was not enough, the court think, to warrant the admission of the evidence. The removal of the property did not so change its character, or value, as to make it inequitable for the original owner, or his assignee, to take it in its new position, and the defendant below was therefore not in a situation to claim any deduction, on the ground that he had acted in the belief that the property was his own.

The next objection relates to the measure of damages.

Upon this point, the counsel for the plaintiff in error contends, that the damages should have been ascertained by taking the value of the logs where they were cut, and that the court erred in instructing the jury to take such value at the mill to which the defendant in error, for his own benefit, carried them. We think this point also, was distinctly decided by this court, in *Final v. Backus, ubi supra,* and in *Symes v. Oliver, 13 Mich., 9;* and that the ruling of the circuit judge was conformable to the law as declared in those cases.

As applied to this kind of property we regard the question now sought to be agitated as definitively settled in

this state.    Our timber interests have a peculiar character, and their protection necessitates the application of pretty strict rules.    While our pine forests, which cover so much of the upper part of the lower peninsula, are a source of wealth, they are very tempting to the cupidity of the lawless of our own and other states.

It is well known that a large portion of the territory possessing pine is wild and uncultivated, and affords by its isolation and destitution of inhabitants extraordinary facilities to depredators.    If the rule invoked by the counsel for the plaintiff in error should be applied in the way for which he contends, it is easy to see that in no very long time the remote tracts would be overrun with trespassers, and the rights of the owners measurably sacrificed, and the public interests seriously injured.

It frequently happens that the owner of a pine tract is desirous of retaining the timber, and is wholly averse to selling it at any price which it would now bring, and it is certainly his legal right to retain it, and to be protected therein.    But if another may shelter himself under color of some claim to the land, which, perhaps, has cost but a trifle, and remove the timber and work it into lumber, and then exonerate himself by paying what witnesses may say was the bare value of the logs at the stumps where they were cut, the right of the real owner may be substantially defeated, and his claim on the justice of the state be made to find a most inadequate response.

But whether the owner wishes to sell or not, it would be gross injustice to allow another to force a sale upon him at a price substantially fixed by the trespasser.    Under the rule contended for, the manufacturer would find it for his interest to refrain from owning the land and save the expense of police, and the necessity of paying taxes, because, without being burdened by such disadvantages, he could

obtain his logs at the same price obtainable by the owner of the land.

Indeed, in whatever light the question presents itself, the rule heretofore declared by this court, appears to be the safest and the best. When the logs are taken to the mill, and the labor of the wrong doer, in cutting and transporting, is added to the original value, it is admitted that the owner may still recover them in replevin, and no reason is perceived why he should not be allowed to recover the then value in trover. It may well happen that the trespasser has so manipulated matters that replevin, which is frequently a difficult remedy when applied to such property, is rendered impracticable. But whether this has occurred or not, the rule ought to be uniform, or as nearly so as practicable.

This disposes of the questions insisted on by the counsel for the plaintiff in error, and as no error is shown, the judgment should be affirmed, with costs.

CHRISTIANCY, CH. J., and CAMPBELL, J., concurred.

COOLEY, J.

I concur in the above, except as to what is said concerning the patent being evidence that the state had title; concerning which I give no opinion.