The West Chicago Park Commissioners

*v.*

Mary Ann Coleman *et al.*

*Filed at Ottawa January 23, 1884.*

1. Limitation—*act of 1839—payment of taxes by one of several tenants in common.* One seeking as tenant in common to avail himself of the possession and payment of taxes by his co-tenant, under the Limitation act of 1839, is not required to first show the conveyance or conveyances under which they claim, passed the absolute title. The transfer of the paramount title is not essential to a co-tenancy or tenancy in common.

2. Where a tenant in common, holding an undivided half of the title or color of title, pays all the taxes assessed and levied upon the entire interest, it will be presumed such payment was made for the other co-tenant as well as for the one so paying. All acts done by a co-tenant relating to or affecting the common property, will be presumed to have been done for the common benefit of all.

3. SAME—*of the proof of the payment of taxes.* Where it is positively sworn by a person that he paid all taxes on a tract of land for seven successive years, and that at the time he had no claim to any other land in the locality, it can make no difference that some of the tax receipts given in evidence do not accurately describe the land.

4. TENANCY IN COMMON—*paramount title not essential.* Where a conveyance of land is made to two or more persons, and possession is taken under it, the grantees in the deed become tenants in common, although the grantor may have had no title to the premises to convey. In such case an inchoate right is created in the grantees, which, by possession and payment of taxes for the requisite period, will ripen into a perfect title, thereby defeating the former paramount title.

5. SAME—*acts of one tenant inure to all.* One tenant in common can not strengthen his own position, or obtain an advantage over his co-tenants, by purchasing an adverse outstanding title in his own name. So the payment of taxes by one inures to the benefit of all.

6. TENANCY BY ENTIRETY—*and tenancy in common, as to the same tract of land.* In 1855 a conveyance of land was made to H. J., N. J., his wife, and M. A. J., his daughter, under which H. J., as the head of the family, took possession: *Held,* that the husband and his wife became seized of an undivided half thereof, as tenants by the entirety, and the daughter of the other half as a tenant in common, and that upon the death of the husband the wife continued to hold the same interest which the two, as one person, had held before.

7. EJECTMENT—PARTIES PLAINTIFF—*tenants in common.* Under our statute tenants in common, although having unequal interests, may join as plaintiffs in an action of ejectment.

8. SAME—*of the judgment.* In such case it is not error to render a joint judgment in their favor in case of a recovery. Upon such recovery the parties plaintiff will hold by several titles, as they did before, according to their respective interests. The possession, only, is joint, and that is always the case with tenants in common.

9. CHAMPERTY—*conveyance of part interest in land to attorney as his fee for its recovery.* A party claiming the undivided half of a tract of land in the adverse possession of another, employed counsel to examine into the facts and bring and conduct a suit for his interest, and in payment of them for such services, and perhaps others, conveyed to them a part interest in the land. The attorneys did not undertake to pay any of the costs or ex-

penses in the maintenance of the suit: *Held,* that the conveyance to the attorneys was not a champertous contract.

10. ˙ To make a case of champerty it is not sufficient to show that a part of the thing recovered was paid, or agreed to be paid, as an attorney's fee. It must also be shown that the costs and expenses of the suit, or some part of them, are paid, or agreed to be paid, by the champertee.

APPEAL from the Superior Court of Cook county; the Hon. ROLLIN S. WILLIAMSON, Judge, presiding.

Mr. GEORGE W. SMITH, for the appellants:

As to what is color of title under the Limitation law, see *Hill* v. *Milton,* 2 Murphy, (N. C.) 14; *Monroe* v. *Merchant,* 28 N. Y. 9; *Brooks* v. *Bruyn,* 35 Ill. 392; *Coleman* v. *Billings,* 89 id. 190.

The instrument must purport to convey title, to be color. *Coleman* v. *Billings,* 89 Ill. 190; *Bride* v. *Watts et al.* 23 id. 507; *Kruse* v. *Wilson,* 79 id. 240; *Mason et al.* v. *Ayers et al.* 73 id. 121; *Rawson* v. *Fox,* 65 id. 200; *Whitney* v. *Stevens,* 77 id. 585.

The Stone deed is mere color, which is distinguished from claim of title. The evidences of the title are, first, color; second, claim in good faith; and third, payment of taxes.

The receipts were not in themselves proof of the payment of the taxes. The signatures were not even proved.

Co-tenants have separate interests in land, each having only an undivided part. These interests are different estates, depending upon different titles. At common law tenants can not join in an action of ejectment. Sedgwick & Waite on Trial of Title, sec. 297.

Mr. ROBERT A. CHILDS, also, for the appellants:

The contract with the attorneys giving them an interest to bring and carry on the suit, is champertous. Bouvier's Law Dic. title "Champerty;" 4 Sharswood's Blackstone's Com. p. 135, notes; 2 Chitty on Contracts, 996, notes; Addison

on Contracts, 194, notes; 2 Parsons on Contracts, 260, 261; 4 Kent's Com. 448, 449, notes; *Thompson et al.* v. *Reynolds,* 73 Ill. 11; *Gilbert* v. *Holmes,* 64 id. 548.

An agreement between attorney and client for a transfer or conveyance by client to attorney of a portion of the subject matter in litigation, as compensation for carrying on the litigation, is absolutely void and illegal at common law. *Berrien* v. *McLain,* 1 Hoff. (N. Y. Ch.) 421; *Wood* v. *Downs,* 18 Ves. 122; *In re Bleachley,* 5 Paige, 313; *Key* v. *Vattien,* 1 Ham. 132; *Thurston* v. *Perceval,* 1 Pick. 415; *Rust* v. *Lane,* 4 Littell, 413; *Backus* v. *Byron,* 4 Mich. 552; *Hilton* v. *Woods,* 4 L. R. Eq. 439; *Wells* v. *Middleton,* 1 Cox, 125; *Ackert* v. *Barker,* 131 Mass. 436; *Lathrop* v. *Amherst Bank,* 9 Metc. 492; *Martin* v. *Clark,* 8 R. I. 401; *Swett et al.* v. *Poor et al.* 11 Mass. 554; *Scobey* v. *Ross,* 13 Ind. 117.

It is not necessary that the attorneys undertake to pay the costs of the court, or the like. *Lathrop* v. *Amherst Bank,* 9 Metc. 492; *Thompson* v. *Reynolds,* 73 Ill. 11; 1 Hawk. Ch. 84, sec. 1; Coke's Lit. 368 b.

Messrs. FORRESTER & FELSENTHAL, for the appellees:

A party purchasing property, and placing a deed therefor on record, is presumed to claim in accordance with the purchase and deed. *Hartshorn* v. *Dawson,* 79 Ill. 108.

The possession of one tenant in common is that of all, and all acts done by the one affecting the common property inures to the benefit of all in general. Sedgwick & Waite on Trial of Title, secs. 276, 279; Freeman on Co-tenancy and Partition, sec. 196.

Payment of taxes need not be proved by the tax receipts,— verbal evidence of that fact is available. *Elston* v. *Kennicott,* 46 Ill. 197; *Hinchman* v. *Whetstone,* 23 id. 108.

Our statute authorizes tenants in common to join in ejectment. (Rev. Stat. 1874, chap. 45, secs. 5, 30.) Holding the same doctrine, see Sedgwick & Waite on Trial of Title, sec.

297; *Jackson* v. *Bradt,* 2 Caines, 170; *Baznore* v. *Nave,* 2 Yerg. 228; *Poole* v. *Fleeger,* 11 Pet. 185.

Tenants in common may join in an action to recover an undivided interest. *Gray* v. *Givens,* 26 Mo. 303; *Huck et al.* v. *Rogers,* 4 Cranch, 164; *Sweet* v. *Patrick,* 11 Maine, 179.

The objection on the ground of champerty was not taken on the trial, and can not be urged on error or appeal. *Sedgwick* v. *Phillips,* 22 Ill. 123.

The law in regard to champerty has been essentially changed in this State. In *Walsh et al.* v. *Shumway et al.* 65 Ill. 471, a contract was made by Sloan, an attorney, to prosecute a suit, he to receive one-fourth of the land for his services, but there was no agreement that Sloan was to pay any costs. The court treated this as a valid contract.

A fair, *bona fide* and reasonable contract for a part of the matter in suit, as a compensation for the attorney's services, is not unlawful. *Berrien* v. *McLain et al.* 1 Hoff. 422.

Mr. Justice MULKEY delivered the opinion of the Court:

On the 26th of August, 1880, the appellees, Mary Coleman, Robert H. Forrester, Martin Beem, and Daniel F. Flannery, brought an action of ejectment in the Superior Court of Cook county, against the West Chicago Park Commissioners, for the recovery of an undivided half of a certain two-acre lot of land, situate in Cook county, being now a part of the city of Chicago. There were three trials of the cause in the court below. The defendants were successful in the first trial, and the plaintiffs in the last two,—the last trial occurring on the 17th of May, 1883, when final judgment was entered in favor of plaintiffs, and the present appeal is from that judgment.

The plaintiffs, for the purpose of showing color of title, offered in evidence a deed from Horatio O. Stone, by his attorney in fact, Myron L. Pearce, bearing date July 11, 1855, and purporting to convey the premises in question to Henry Johnson, Nancy Johnson, his wife, and Mary Ann

Johnson, his daughter, now Mary Ann Coleman. Nancy Johnson being then introduced as a witness on behalf of plaintiffs, testified that Mr. Stone claimed to own the property, and she thought she was getting a good title when she bought it; that it was paid for betwixt her and her husband, Henry Johnson; that he died about two years before the war between the North and South; that she and her husband fenced the property in; that he rented it to George Dixon before his death, and she rented it to him afterwards, at five dollars a month; that she had a little cottage built on it, which was used by Dixon to keep his tools in, and that she paid all the taxes, and got receipts therefor. Witness then produced tax receipts, which were admitted in evidence, showing the payment by her of the taxes on the premises for the years 1861 to 1868, inclusive, the first receipt bearing date May 7, 1862, and the last, May 10, 1869. The witness further testifies that she owned no other land in the vicinity of this property, and that she paid the taxes for herself and daughter, Mary Ann Johnson, now Mary Ann Coleman, though the name of the latter does not appear in any of the receipts. Plaintiffs, to complete their chain of title, put in evidence three additional deeds: First, a quitclaim deed, bearing date January 29, 1877, from the said Mary Ann Coleman, and her husband, Augustus Coleman, to appellees Robert H. Forrester, and Martin Beem, and Edward A. Gibbs, for an undivided third part of the lot in question; second, a deed from the said Mary and George Coleman, bearing date June 28, 1879, to the said Forrester and Beam, and Daniel F. Flannery, for the undivided one-third of said premises,— this deed being given merely for the purpose of curing a supposed defect in the deed last mentioned; third, a deed bearing date April 12, 1879, from the said Edward A. Gibbs, and Jennie L. Gibbs, his wife, to the said Daniel F. Flannery, for all their interest in said lot. For the purpose of showing title in the defendants, defendants' counsel then offered in

evidence a warranty deed, dated April 1, 1870, from said Nancy Johnson to the West Chicago Park Commissioners. Some additional evidence was offered by the defendants, and admitted by the court, but as we are of opinion it does not materially affect the legal aspects of the case, it is unnecessary to set it out.

Numerous reasons are assigned for a reversal of the judgment in this case, but we perceive no merit in any of them. It is first said by counsel for appellants: "The plaintiffs were bound to prove ownership of title to the one-half claimed by the declaration, in order to establish a co-tenancy. They could not assume the tenancy, and out of the doctrines and rules of that relation build up a title." If we do not misapprehend counsel, the position is taken that where one seeks as tenant in common to avail himself of the payment of taxes and possession of his co-tenant, under the Limitation act of 1839, he must first show the conveyance or conveyances under which they claim passed the absolute title, otherwise no co-tenancy would arise. The position in question, as we understand it, resolves itself into this: If the claimants' title is perfectly good of itself, and can not therefore be strengthened by an appeal to the Limitation law, then such claimant may avail himself of the possession, payment of taxes, etc., of his co-tenant, for the purpose of bringing himself within its provisions, otherwise not. We do not concur in this view. It would, in effect, be holding that the Limitation act in question has no application to tenants in common. Such a position is in direct conflict with some of the fundamental principles growing out of and governing that relation. For instance, nothing is better settled than that one tenant in common can not strengthen his own position, or obtain an advantage over his co-tenants, by purchasing an adverse outstanding title in his own name. (Freeman on Co-tenancy, sec. 154.) Now, if no such tenancy can be created except where the co-tenants acquire the paramount title, there could

be no place in the law for such a doctrine.   Other reasons of a similar character might be suggested why such· a position can not be sanctioned, but it is unn'ecessary to do so.

Where a conveyance of a piece of land is made to two or more persons, and possession is taken under it, the grantees in such deed become tenants in common, although the grantor may have had no title whatever to the premises.   By the delivery of the deed in such case an inchoate right is created in the grantees, notwithstanding the paramount title is in another, which, by possession and payment of taxes for the requisite period, will ripen into a perfect title, thereby defeating the former paramount title.   When Johnson, as head of the family, took possession of the lot in controversy under the Stone· deed, he and his wife became seized of one undivided half thereof as tenants by entirety, and the daughter of the other half.   Upon Johnson's death the wife continued to hold the same interest in the property which the two as one person had held before, namely, one undivided half. (Freeman on Co-tenancy, sec. 70, *et seq.*; Washburn on Real Prop. 333.)   This being so, there is no just ground for the contention that the bar under the Limitation act of 1839 was not fully made out.   That the Stone deed was good as color of title, is not disputed, and the exceptions taken to the sufficiency of the proof of payment of taxes hardly demands consideration.   The fact that some or all of the tax receipts may not accurately describe the land, when it is positively sworn the taxes were paid on this particular two acres of land, and that the party paying them had no claim to any other land in that locality, does not make a particle of difference.   *Elston* v. *Kennicott*, 46 Ill. 197.

But it is objected there is no satisfactory proof that Nancy Johnson paid any part of these taxes for her daughter, through whom appellees claim.   Why not?·  She paid all the taxes charged against the land, being double the amount required to discharge the taxes on her own interest in the property,

and as she knew, or at least is conclusively presumed to have known, as between herself and daughter the latter was bound for the other half of the taxes, is it not reasonable to presume that in paying the whole amount she intended the payments for the benefit of both of them? But whether so intended or not, as this property was held by her and her daughter as tenants in common, such payments are deemed in law to have been made for the benefit of the daughter as well as herself. Indeed, it is a general rule of law that all acts done by a co-tenant relating to or affecting the common property, are presumed to have been done for the common benefit of all the co-tenants. Freeman on Co-tenancy, sec. 166.

But in addition to all this, the mother swears positively that the payment of taxes made by her was for her and her daughter, and her testimony on this point is not contradicted by any one. To this, however, it is objected, that her testimony is inconsistent with her conduct; that her conveyance of the whole of this property by warranty deed to the appellants, as heretofore shown, is conclusive evidence that she regarded the property as her own, and that she ought not now to be permitted to allege anything to the contrary. It must be remembered the mother is not setting up in this litigation any right to the property in question, as against the appellants or any one else. She appears in the case merely as a witness, at the instance of parties not claiming through her, who have a right to insist upon her testimony, and it is clear she has been called to testify against her own interests, for if the effect of her testimony is to establish title in her daughter and her daughter's grantees, it will certainly fix her liability on the covenants in her deed to the West Park Commissioners. So there is nothing in this suggestion.

It is also objected the judgment is erroneous on the ground it is in favor of all the plaintiffs, jointly, for an undivided half of the property, whereas the proofs show they had separate and unequal interests in it, and it is therefore claimed

the judgment should have been several, and not joint.   It is
true tenants in common could not, at common law, join as
plaintiffs in an action of ejectment, on the ground their titles
are several; but in a number of the States, including our
own, the common law rule on this subject has been changed
by legislative enactment.   Under our statute tenants in com-
mon, although having unequal interests, may join as plain-
tiffs, and in such case it is not error to render a joint
judgment in the event of a recovery. . Upon such recovery
the parties plaintiff will hold by several titles, as they did
before, according to their respective interests.   The posses-
sion, only, is joint, and that is always the case with tenants
in common.   Rev. Stat. 1874, chap. 45, secs. 5, 30.

Finally it is objected, appellees other than Mary Ann Cole-
man are not entitled to recover, because they are claiming
through a champertous deed.   Waiving the questions whether
appellants, being strangers to the alleged champertous deed,
can raise this question at all, or whether, conceding this may
be done, it can be raised for the first time in this court, as is
the case here, we do not think the point is well taken.   The
rigor of the common law with respect to champerty and main-
tenance, has been greatly modified in later times.   Under
its influence, as it anciently existed, the familiar doctrine
that choses in action are not assignable, had its origin.   So,
also, the well recognized principle of common law that a con-
veyance of corporeal hereditaments in the adverse possession
of another is inoperative and void, sprang, in part, from the
same source.   To remedy the inconveniences and hardships
arising from the first of these doctrines, courts of equity inter-
posed, at an early day, in favor of the assignee, holding that
while such assignments were void at law, they were, when
not otherwise objectionable, valid in equity, in consequence
of which these equitable assignments soon became one of the
most fruitful sources of equity jurisdiction, and have so con-
tinued until the present time.   With a like view the legisla-

tures of some of the States, including our own, have passed acts enabling persons having titles to or interests in lands, to convey the same to others, notwithstanding such lands may be in the possession of an adverse claimant.

But waiving this consideration altogether, we do not think, according to the weight of modern authority, the conveyance in question is champertous. ˙ The substance of the transaction is simply this: Mary Ann Coleman, claiming to be the owner of an undivided half of a certain piece of land then in the adverse possession of another, and being desirous of instituting proceedings for the recovery of the same, employed Forrester, Beem & Gibbs, attorneys at law, to conduct said proceedings, and in payment thereof conveyed to them a part of her interest in the land. The additional fact appears, that these attorneys had advanced money for her to pay for an abstract of title to the land. It is not altogether clear whether this advance by them constituted a part of the consideration of their purchase; but whether it did or not is wholly immaterial, as that was a matter entirely collateral to the contemplated suit, and constituted no part of the costs or expenses of it. So far as this record shows, these attorneys did not undertake to pay one cent of her costs or expenses in the maintenance of the suit, which is a complete answer to the claim the conveyance was a champertous contract. To make out a case of champerty it is not sufficient to show that a part of the thing recovered was paid or agreed to be paid as an attorney's fee. It must also be shown that the costs and expenses of the suit, or some part of them, are paid or agreed to be paid by the champertee. In Chitty on Contracts, (10th Am. ed.) page 745, the author defines champerty to be, "A bargain with a plaintiff or defendant to divide the land or other matter sued for, between them, if they proceed at law, whereupon the champertee is to carry on the party's suit at his own expense." It is clear from this definition, the case at bar does not come within its terms. This view of the law

is fully sustained by *Walsh et al.* v. *Shumway et al.* 65 Ill. 471, and there is nothing in the cases cited by appellants laying down a contrary doctrine. *Gilbert et al.* v. *Holmes,* 64 Ill. 548; *Thompson* v. *Reynolds,* 73 id. 11; *Coleman* v. *Billings,* 89 id. 187.

The judgment will be affirmed.

*Judgment affirmed.*

Mr. JUSTICE DICKEY took no part in this decision.