THE ILLINOIS LAND AND LOAN COMPANY

*v.*

JULIUS SPEYER *et al.*

*Filed at Ottawa June 15, 1891.*

1. ASSIGNMENT *of right to sue—maintenance.* The assignee of a party who had bargained for the sale of land, filed a bill, with the assignor, to set aside the contract of the latter for fraud practiced on him, as a cloud upon the title. The assignor, on his petition, was dismissed out of the case as co-complainant, whereupon the assignee made him a co-defendant, and still sought to have the contract set aside. It appeared that the assignee was to purchase the land in case the contract of his assignor was set aside, otherwise not, and to dismiss an action of ejectment against the assignor, which he did : *Held,* that the contract of assignment was void, as being against public policy, and that the bill was obnoxious to demurrer notwithstanding the dismissal of the ejectment suit, which was nothing more than a part of the consideration for the assignment.

2. The assignment of a bare right to file a bill in equity for a fraud committed on the assignor will be held void, as being against public policy and savoring of maintenance.

3. CLOUD ON TITLE—*bill to remove, essentials of.* A bill to set aside a recorded agreement for the purchase of land as a cloud on the title, should show on its face, either that the land is vacant, or that it is in the possession of the complainant.

4. SAME—*adverse possession.* Where the owner of land repudiates his agreement for its sale, his possession will be regarded as adverse to his vendee, and the latter can not make use of such possession as a ground to give a court of equity jurisdiction to remove a cloud from the title.

5. PRACTICE IN CHANCERY—*joint demurrer—waiver by one defendant.* Whether one of two defendants to a bill in chancery has waived his right to demur thereto will be immaterial when both defendants file a joint and several demurrer, as the demurrer of one of the defendants will be sufficient to raise the question of the sufficiency of the bill.

APPEAL from the Circuit Court of Cook county; the Hon. L. C. COLLINS, Judge, presiding.

Mr. WILLIAM R. PLUM, for the appellant:

The court erred in dismissing Munhoven as a co-complainant. Appellant had honestly acquired the right to use his name to the bill. The contract, in express terms, gave that right.

A power coupled with an interest is irrevocable, though it is not so expressly stated. *Hunt* v. *Rousmanier*, 8 Wheat. 174; *Bromby* v. *Holland*, 7 Ves. Jr. 28; *Smythe* v. *Craig*, 3 W. & S. 20; *Gaussen* v. *Morton*, 10 B. & C. 731; *Poston* v. *Russett*, 5 Cal. 469; *Blackstone* v. *Buttermore*, 53 Pa. St. 266; Story on Agency, sec. 477.

Having taken all primary benefits of the contract, Munhoven could not avoid it, if at all, without restitution. *Masson* v. *Bovet*, 1 Denio, 74; *Murphy* v. *Lockwood*, 21 Ill. 611.

The right to set aside the Speyer contract may be assigned. *Thallhimer* v. *Brinckerhoff*, 3 Cow. 623; *Stewart* v. *Balderston*, 19 Ky. 131; *Thompson* v. *Marshall*, 36 Ala. 504; *Dawley* v. *Brown*, 79 N. Y. 390; *Lathrop* v. *Amherst Bank*, 9 Metc. 489; *Blackerly* v. *Holton*, 5 Dana, 520; *Master* v. *Miller*, 4 T. R. 340; Hawkins' P. C. (Curw. ed.) p. 456, secs. 14-17, 20-23; *Ford* v.

*Olden,* 3 Eq. 461; *Wickham* v. *Conklin,* 8 Johns. 220; *Perine* v. *Dunn,* 3 Johns. Ch. 508; *Tilman* v. *Searcy,* 7 Humph. 347; *Conley* v. *Osborne,* 50 Iowa, 526; Pollock's Prs. of Conts. (ed. 1881,) 561; *Lazard* v. *Wheeler,* 22 Cal. 139; *Final* v. *Backus,* 18 Mich. 231; *Tyson* v. *McGuineas,* 25 Wis. 656; *Anderson* v. *Caraway,* 27 W. Va. 396; *Fetrow* v. *Merriwether,* 53 Ill. 279; *Zeigler* v. *Hughes,* 55 id. 301; *Torrence* v. *Shedd,* 112 id. 466; *Whitney* v. *Roberts,* 22 id. 381.

Messrs. DUNCAN & GILBERT, for the appellees:

The contract is, in effect, one for the prosecution of a suit in equity against Speyer for a fraud alleged to have been committed by him upon Munhoven, or, rather, it is the assignment of the bare right to prosecute such a suit.   Such a contract or assignment, while not strictly champertous, yet so savors of maintenance that a court of equity will not regard it as valid.   *Norton* v. *Tuttle,* 60 Ill. 130; *Brush* v. *Sweet,* 38 Mich. 574; *Thompson* v. *Reynolds,* 73 Ill. 11.

In order to induce a court of equity to enforce a contract specifically, it must be founded on a good consideration,—it must be reasonable, fair and just.   *Stone* v. *Pratt,* 25 Ill. 25; *Lear* v. *Chouteau,* 23 id. 39; *Bowman* v. *Cunningham,* 78 id. 48.

Mr. CHIEF JUSTICE MAGRUDER delivered the opinion of the Court:

This cause was heard by the Circuit Court of Cook County upon the joint and several general demurrer of the defendants below, who are the appellees here, to the amended bill of the appellant company, the complainant below.   The Circuit Court sustained the demurrer and dismissed the cause at complainant's costs.   From such decree sustaining the demurrer and dismissing the bill the present appeal is prosecuted.

Before the filing of the original bill, the defendant Munhoven had entered into a contract with the defendant Speyer for the conveyance to the latter of the former's interest in a

certain tract of land, which contract had been filed for record "thereby clouding" the Munhoven title.    The original bill was filed by the appellant company and the appellee Munhoven, as co-complainants, against the appellee Speyer as sole defendant; it set up the substance of the agreement of April 25, 1889, between the Company and Munhoven as hereinafter set forth, and sought to have the contract with Speyer set aside for fraud.    Speyer demurred to the original bill but his demurrer was overruled; he then answered it, and exceptions to his answer were filed and overruled, and replication was filed to the answer.

While the cause stood thus at issue, Munhoven filed a petition praying that he be permitted to dismiss the bill "so far as it concerns himself," or that his "name be stricken out as one of the complainants" therein.    The petition refers to the agreement of April 25, 1889, between the Company and Munhoven, which is attached as an exhibit to the original bill, and is as follows:

"These articles of agreement witnesseth, that, whereas, there are various conflicting rights, titles and interests in and to the land herein fully described; and whereas, there is a suit in ejectment pending in court by the Illinois Land and Loan Company, a corporation under the laws of Illinois, against J. Peter Munhoven and others; and whereas, said Munhoven, party of the first part hereto, and said Illinois Land and Loan Company, party of the second part hereto, have mutually agreed to compromise, adjust and settle all of their differences in manner following,—that is to say, that said party of the first part hereby covenants and agrees to convey unto said party of the second part, by his good and sufficient special warranty deed, all of his rights, titles and interests in and to said premises obtained from the government of the United States, subject only to the agreement or writing hereinafter mentioned with one Speyer to be removed and the mortgage or trust deed herein described; said premises being described

as follows: * * * And to fulfill the further agreements herein designated to be performed by him, in consideration whereof said party of the second part covenants and agrees to pay said party of the first part the sum of five thousand dollars ($5000) in cash, less deductions herein named, if any, upon the delivery of said deed, which is to be made as soon as said Speyer writing is canceled or set aside.

"Said party of the second part also agrees to guarantee and protect said party of the first part against the one certain note signed by him, dated May 26, 1885, for one thousand dollars, payable to the order of William and Henry J. Kemper, and secured on said premises, of even date with said note, by trust deed. Said party of the first part is to receive, and said party of the second part agrees to convey unto him, by warranty deed, a piece of ground of the size of fifty feet by one hundred and twenty-five feet, to include the piece or parcel of land on which the house of said first party now stands, or if said party is unable to make perfect title thereto, then to convey other land as near thereto as perfect title shall be in said second party; but this conveyance is not to be made unless said Speyer writing is first canceled or set aside.

"Said party of the first part further agrees, contingent as last aforesaid, to pay said party of the first part the further sum of one thousand dollars, provided always that said party of the second part shall sell said real estate to be conveyed to it, as herein provided, for enough over and above all costs and expenses it may be put to in the purchase of said real estate, or incident to the ownership thereof, so that it can pay the same without loss, and such payment is not to be required until after a sale of said land at the pleasure of said party of the second part, regardless of said party of the first part. In computing such costs, all tax claims are to be figured the same as if redemptions were to be made by persons under age, with interest at ten per cent per annum thereon, and costs of

deed figured at five dollars per lot in Russell's subdivision of each deed, and like interest at ten per cent per annum.

"It is further agreed, that whereas, on or about March 18, 1889, said party of the first part signed with one Julius Speyer an agreement concerning said real estate first above described, which writing has not been fulfilled as it is claimed by said party of the first part, and is subject to other objections; and whereas, said party of the second part requires a release and quitclaim of all interest said Speyer may have acquired: now, in case said party of the first part shall fail to secure the same within five days hereof, then said party of the second part is hereby authorized and empowered, at the cost of said party of the first part, to begin suit to cancel and annul said agreement in the name of said party of the first part, or jointly with said party of the second part, or otherwise, or to defend any suit said Speyer or his heirs or assigns may commence, and file a cross-bill therein, or take any other proper proceeding. In case said agreement with Speyer is sustained, then said party of the second part is to have and receive, out of any payments to be made under said Speyer writing, the full payment of all costs of any legal proceedings and other expenses or outlays it may be put to on account of this contract, with interest, including twenty-five dollars per month which it is to advance to said party of the first part while said legal proceedings are undetermined and the validity of said agreement unsettled. In case said party of the second part is successful in setting aside said agreement, its outlays on account thereof are to be borne by said first party.

"Said party of the first part agrees that subject to said Speyer agreement he has done nothing to affect the title he obtained from the government, and there are no liens upon such rights except said mortgage or trust deed.

"Witness our hands and seals, at Chicago, this 25th day of April, 1889."

The petition of Munhoven then proceeds to state, that the foregoing agreement of April 25, 1889, was obtained from the petitioner by the fraud of the company's agents, and by their false representations that the Speyer contract was fraudulent and void; that petitioner had become satisfied of the validity of the Speyer contract and of his obligation to perform it, and had repudiated the Company contract, as the company knew before it filed the bill; that the charges of wrong-doing made against Speyer are unjustifiable; that petitioner is unwilling to have his name used as complainant, and desires to carry out the Speyer contract; that "petitioner is willing and anxious to be made a defendant to said bill, and, if so made a defendant, will forthwith enter his appearance in said cause and file his answer to said bill." Therefore the court made an order that the bill be dismissed as to Munhoven, that his name be stricken therefrom as complainant, and that the company have leave to file an amended bill.

Thereafter on October 31, 1890, the company as sole complainant filed the amended bill above mentioned against Munhoven and Speyer as defendants, which alleges that the Speyer contract was obtained from Munhoven by fraud and deceit, and was fraudulently altered by Speyer so not to express the real terms and conditions agreed to by Munhoven, and, as thus altered, was filed for record by Speyer "thereby clouding said title"; that Munhoven had tendered back to Speyer the $50.00 paid in cash and had demanded a quitclaim deed, but the tender had been rejected, and compliance with the demand had been refused; that thereupon Munhoven made the agreement of April 25, 1889, as above set forth, with the complainant company; that Munhoven is aged and infirm, and, since the execution of said agreement with complainant, has been conspiring with Speyer to injure the complainant, and refuses to co-operate with it, and to allow the use of his name as co-complainant, and has successfully applied to the court to be dismissed out of the cause as co-complainant; that complain-

ant has caused the Kemper security to be purchased, and has allowed said ejectment suit to be dismissed, and is ready to perform its agreement; that complainant was "the owner of various titles and claims in and to" said land; "that said title and claims were in conflict with those of said Munhoven who claimed title by patent from the government *  *  * and possession thereunder, which possession still continues for the use and benefit of said  *  *  * company under" said agreement of April 25, 1889. The prayer of the amended bill is, that the Speyer contract may be decreed to be delivered up to be canceled, and that Speyer may be decreed to execute and deliver to the company a quit claim deed of said land.

A careful analysis of the agreement between Munhoven and the company shows, that it is a mere executory agreement for the sale by the former to the latter of his interest in the land, conditioned upon the setting aside of the Speyer contract and not to be carried out unless said contract shall be set aside. Munhoven is not to make a deed to the company until the Speyer writing is canceled or set aside. The company is not to pay to Munhoven any part of the sum of $5000.00, or of the sum of $1000.00, or to convey the ground 50 by 125 feet, until the Speyer writing is canceled. If the Speyer writing is sustained, the company is to be reimbursed for all its advances out of what Munhoven may realize from the Speyer contract. If the Speyer contract is set aside, the company is still entitled to deduct its outlays and advances from the monies to be paid by it to Munhoven. While it is true that the company agreed to protect Munhoven against the Kemper mortgage, yet the allegations of the bill show that it did not actually pay off that mortgage, but purchased it and held it against the land, so that it could lose nothing by such purchase. The agreement between appellant and Munhoven was so ingeniously drawn that the former was to part with nothing until the suit with Speyer should be ended, and not then to lose anything if the suit should terminate unfavorably. Munhoven agreed that

the appellant should go to work and set aside the Speyer contract, and, after that was accomplished, then certain things were to be done towards carrying out a sale of the land. Under this state of facts, the amended bill shows nothing more than the assignment by Munhoven to the company of the right to bring a suit against Speyer to set aside the recorded contract with him which was a cloud upon the title. The allegations of the amended bill further show, that the ground, upon which the Speyer contract was to be set aside, was the alleged fraud practiced by Speyer in its procurement. The amended bill is not filed in the name of Munhoven, who is alleged therein to have repudiated his agreement with the company and to have withdrawn his consent to the use of his name as complainant, but it is filed by the company as the assignee of Munhoven's right of action against Speyer.

It is well settled, that the assignment of a bare right to file a bill in equity for a fraud committed on the assignor will be held void as being against public policy and savoring of maintenance. (2 Story's Eq. Jur. sec. 1040 h; 3 Pomeroy's Eq. Jur. sec. 1276; 1 Am. and Eng. Encycl. of Law, page 833; *M. & M. R. R.* v. *M. & M. R. R.* 20 Wis. 183; *Gardner* v. *Adams,* 12 Wend. 297; *Marshall* v. *Means,* 12 Ga. 61; *Dayton* v. *Fargo,* 45 Mich. 153; *Brush* v. *Sweet,* 38 id. 574; *De-Hoghton* v. *Money,* L. R. 2 Ch. 169; *Proser* v. *Edmunds,* 1 Younge & Coll. Exch. R. 481.) We applied this doctrine to a state of facts very much like the facts in the case at bar in *Norton* v. *Tuttle,* 60 Ill. 130. Inasmuch as the amended bill here rests upon such an assignment of a right to file a bill for fraud committed upon the assignor as is thus condemned by the weight of authority, we must hold that the demurrer to it was properly sustained. The allegation, that the company dismissed its ejectment suit against Munhoven, would make no difference in the application of this doctrine to the agreement of April 25, 1889; for such dismissal could be nothing more than a part of the consideration for the assignment, and, if

10—138 ILL.

the assignment was void as against public policy, it would be none the less so because made for a consideration.

It is urged by appellant, that Munhoven expressed his willingness in the petition filed by him to "file an answer to said bill" in the event of its dismissal as to him, and that, therefore, the court should have overruled his demurrer and required him to answer. Without determining whether or not there was any thing in the petition, or order made thereon, which amounted to a waiver on the part of Munhoven of his right to demur, and required him to answer, we deem it sufficient to say that Speyer had a right to demur, and, as the demurrer is several as well as joint, it raised the question of the sufficiency of the amended bill as to him. The amended bill does not ask for a specific performance of the agreement between the company and Munhoven; it sets up such agreement merely for the purpose of showing the company's supposed right to bring the suit; it is nothing more nor less than a bill to remove Speyer's contract as a cloud upon the title. Being such, it should show upon its face, either that the land was vacant and unoccupied, or that it was in the possession of the complainant. It does neither, and was therefore properly demurred to.

The amended bill recites that Munhoven is in possession of the land. It is true that it claims such possession to be for the use and benefit of the complainant under the agreement of April 25, but inasmuch as it also avers that Munhoven has repudiated that agreement, and refuses to carry it out or be bound by it, his possession must be regarded as one that is adverse to the company, and hence cannot be made use of by the company as complainant to give a court of equity jurisdiction to remove a cloud from the title.

The decree of the Circuit Court is affirmed.

*Decree affirmed.*