## THE NORTH CHICAGO STREET RAILROAD COMPANY

*v.*

## LEMUEL M. ACKLEY. [1]

*Opinion filed December 22, 1897—Rehearing denied February 3, 1898.*

1. PRACTICE—*in chancery—decree pro confesso concludes the defendant only as to truth of averments of bill.* A decree *pro confesso*, entered by default to a bill in chancery, concludes the defendant only as to the truth of the averments, and the sufficiency of the bill itself and the averments contained therein may be attacked, on appeal, as not justifying the decree.

2. ASSIGNMENT—*general rule as to the assignment of causes of action arising from torts.* Causes of action arising from torts to property, real or personal, or from injuries to the decedent's estate which decrease its value, are assignable; but torts to the person or character, where the injury or damage is confined to the body or feelings, are not assignable. (CRAIG and MAGRUDER, JJ., dissenting.)

3. SAME—*the survival of a cause of action is not the sole test of its assignability.* Whether a cause of action survives the party in whom it was vested is not the sole test for determining the question of its assignability.

4. SAME—*purpose of act providing for survival of action for personal injuries resulting in death.* The purpose of the act concerning the survival of an action for personal injuries which result in death, (Rev. Stat. 1874, p. 582,) is to enable the personal representatives of the deceased to recover damages "for the exclusive benefit of the widow and next of kin."

5. SAME—*right of action for personal injuries is not assignable.* The sale or assignment of a right of action for personal injuries is void, on grounds of public policy, as the law will not regard the right of a citizen to recover damages for injuries to his person as a commodity of sale. Nor does the statute which provides for the survival of actions for personal injuries resulting in death make such actions assignable. (CRAIG and MAGRUDER, JJ., dissenting.)

6. CONTRACTS—*contract forbidding client to compromise suit is void.* A contract between an attorney and client whereby the client agrees not to compromise or settle his claim is void, as tending to foster and encourage litigation.

7. SAME—*when contract between attorney and client is invalid—right to compromise suit.* A contract whereby a person assigns one-half of her right of action for personal injuries to her attorney, who is to conduct a suit for damages for one-half the amount recovered, and whereby the client agrees not to compromise or settle the

claim, is invalid; and the defendant to the damage suit may, with notice of the contract, compromise with the plaintiff without the knowledge or consent of her attorney, and will not be liable to the attorney for his part. (CRAIG and MAGRUDER, JJ., dissenting.)

*North Chicago Street R. R. Co.* v. *Ackley*, 58 Ill. App. 572, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county; the Hon. PHILIP STEIN, Judge, presiding.

Appellee filed his bill against appellant, alleging that in 1891 Mrs. Mary Butler was injured while alighting from a cable car of the defendant, by reason of the negligence of the grip-man; that she employed the complainant as her attorney, upon a contingent fee, by a contract in writing, whereby he agreed to take exclusive charge of the matter and prosecute such parties as he might deem liable for such injuries, and begin and prosecute diligently to final settlement such suits or legal proceedings as he might deem necessary; that he was to receive a sum equal to one-half the gross amount recovered or received on account of such injuries, and to secure the payment of such fee Mrs. Butler assigned to the complainant and his assigns one-half of such right of action, and agreed to assign in proper legal form, in writing, upon request, one-half of any verdict or judgment which might be had or recovered by reason of such accident and injury; that Mrs. Butler further agreed to pay the costs, and not to settle or compromise such claim, or have any dealings with any person in reference thereto other than such attorney, but if the matter were settled before the suit was placed on the trial call, the fees were to be less than one-half, in proportion to the work done up to the date of such settlement. This contract was signed and sealed by the parties September 2, 1891. The bill then recites a collateral verbal agreement, made at the same time, whereby the complainant agreed to employ associate counsel, and states

that this written contract conveyed to the complainant the ownership of one-half of Mrs. Butler's right of action; alleges that, relying on such assignment and covenants, the complainant hunted up witnesses, took their written statements and addresses, began a suit in September, 1891, engaged associate counsel, prepared the pleadings, watched the case when it was reached upon the first call, in April, 1894, had it then marked for trial, and watched it eight days on the trial call; that on May 15, 1894, while it was on the trial call, the defendant, by one of its attorneys, called on Mrs. Butler and assured her that, notwithstanding her previous assignment of such cause of action, (of which notice to the defendant is charged,) she had full power herself to release and discharge the defendant from all liability by reason of such injuries; that she owed complainant only a small amount for his services; that she might personally collect the whole amount which the company would pay, and that the company's attorneys would defend her from any suit Ackley might bring; that thereupon the company's attorney paid her $3750 and obtained from her a full release, together with a letter to the complainant informing him of the settlement, and directing him to sign a stipulation of the settlement; that on the day following, without notice to the complainant, the case was called up out of its order in the court in which it was on the trial call, and a judgment entered for $3750, which was satisfied in open court; that the complainant has never received anything for his services; that Mrs. Butler and the railroad company refuse to pay him anything, and that she is insolvent, as he is informed and believes; that by reason of these facts Mrs. Butler had no legal right to receive more than one-half of the money paid as compensation for such injury, and that the defendant was bound, after notice, to pay one-half of whatever amount was agreed upon in settlement of such claim, to the complainant, and that such right of the complainant could not be taken from him without his

consent; that there was due to the complainant from the defendant the sum of $1875, being one-half of the amount for which such settlement was made, with legal interest from May 15, 1894. The bill then prays that the defendant be decreed to pay to the complainant the amount alleged to be due, and for general relief.

On June 5, 1894, the appearance of the defendant was entered, and on June 30 a default was taken against it. On September 11 the court rendered a decree that the bill be taken as confessed, and that all matters and things therein stated were true; that the equities were with the complainant; that the court had jurisdiction of and over all the parties thereto and the subject matter therein, and that there was due and owing from the defendant to the complainant the sum of $1875, being one-half of the sum of $3750 which was paid to Mary Butler by the defendant, as alleged in the bill, and on motion of the complainant it was ordered and decreed that the complainant have and recover from the defendant the sum of $1875, together with costs of suit. A motion was made by the defendant to set aside the decree and for leave to file an answer at its cost, which was supported by affidavit to the effect that the defendant had a defense to the bill upon the merits to the whole of the complainant's demand, which motion was denied by the court. The defendant (appellant here) appealed to the Appellate Court for the First District, where the decree of the trial court was affirmed, and it prosecutes this appeal.

EGBERT JAMIESON, and JOHN A. ROSE, for appellant:

A right of action for personal injuries is not assignable. *Railroad Co.* v. *Maher*, 91 Ill. 314; *Norton* v. *Tuttle*, 60 id. 134; *Prosser* v. *Edmunds*, 1 Y. & C. 481; *Rice* v. *Stone*, 1 Allen, 568; *Land and Loan Co.* v. *Speyer*, 138 Ill. 145; *Linton* v. *Hurley*, 104 Mass. 353; *Coughlin* v. *Railroad Co.* 71 N. Y. 446; *Oliwell* v. *Verdenhalven*, 26 id. 116; *Averill* v. *Longfellow*, 66 Me. 237; *Swanston* v. *Mining Co.* 13 Fed. Rep. 216;

*Railroad Co.* v. *Railroad Co.* 87 Ga. 388; *Hunt* v. *Conrad*, 47 Minn. 557; Greenhood on Public Policy, 474; *Boardman* v. *Thompson*, 25 Iowa, 487; *Lewis* v. *Lewis*, 15 Ohio, 715; *Elwood* v. *Wilson*, 21 Iowa, 523.

A decree *pro confesso* concludes the party only as to the averments in the bill. He may contest the sufficiency of the bill itself, and insist that the averments contained in it do not justify the decree. *Gault* v. *Hoagland*, 25 Ill. 241; *Railroad Co.* v. *Maher*, 91 id. 314.

A cause of action on a verbal contract, or for an injury to the person or property of another, is not assignable, so as to pass the right of action. *Railroad Co.* v. *Loeb*, 118 Ill. 203; *Railroad Co.* v. *Calkins*, 17 Ill. App. 55.

A contract between a client and the attorney, whereby the client shall not have the privilege of settling or discontinuing his suit without the assent of the attorney, is void. *Lewis* v. *Lewis*, 15 Ohio, 715.

L. M. ACKLEY, *pro se:*

A right of action to recover damages for negligence resulting in an injury to property may be assigned, and an action at law therefor may be brought by the assignee in the assignor's name. *Insurance Co.* v. *Frost*, 37 Ill. 333; *Railroad Co.* v. *Middlecoff*, 150 id. 27; *Over* v. *Railroad Co.* 63 Fed. Rep. 34; *Cunningham* v. *Railroad Co.* 102 Ind. 478.

All such rights of action for a tort as would survive to the personal representatives may be assigned, so as to pass an interest. *Tyson* v. *McGuinness*, 25 Wis. 656.

All choses in action embracing demands which are considered as matters of property or estate, are now assignable either at law or in equity. Nothing is excluded but mere personal torts, which die with the party. *Hoyt* v. *Thompson*, 1 Paige, 320.

All such rights of action for tort as would survive to the personal representatives may be assigned so as to pass an interest to the assignee, which he can enforce by suit at law. *Final* v. *Backus*, 18 Mich. 218.

Mr. CHIEF JUSTICE PHILLIPS delivered the opinion of the court:

Where the defendant to a bill in chancery has been defaulted and a decree *pro confesso* entered, that decree concludes the party only as to the averments of the bill, and the sufficiency of the bill itself, and the averments contained in it, may be attacked as not justifying the decree. (*Gault* v. *Hoagland*, 25 Ill. 241.) The material inquiry therefore is, first, whether a right of action for personal injuries is assignable; and second, whether a contract by which the control of the party in interest over litigation carried on in his name or behalf is prevented is void.

By the common law, actions arising out of torts did not, in general, survive. The statute of this State has materially changed the rule with reference to actions which survive, and it is now the general rule in this country that causes of action arising from torts to property, real or personal, or injuries to the decedent's estate by which its value is diminished, survive and go to the executor and are assets in his hands, and such causes of action are assignable. But it is usually held that torts to the person or character, when the injury or damage is confined to the body or the feelings, and those contracts the breach of which produces direct injury and damage, both mentally and to the person, are, so long as they are executory, not assignable. The controversy here is whether an action for personal injuries is assignable.

Numerous authorities are referred to by counsel for appellee which lay down the rule that in many cases of torts to property causes of action may be assigned, and of those cases we cite the following: In *Jackson* v. *Daggett*, 31 N. Y. Sup. 204, an action against a sheriff for failure to return an execution was held assignable. *Dinney* v. *Foy*, 38 Barb. 18, was an action against a sheriff for neglecting to arrest a debtor upon an execution against his person, and the cause of action was held assignable. *Grant* v. *Ludlow*, 8 Ohio St. 51, was a bill of review to set

aside a decree based on a commercial transaction. The case was relative to a mortgage, and the point made was, that the transaction was in the nature of a tort and not transferable to executors or administrators, and died with the person. The court held that it survived—that the mortgage was assignable. *Robinson* v. *Weeks*, 6 How. Pr. 161, was an action for taking and converting personal property, brought by an assignee, and it was held that the assignment was good. *Hall* v. *Cincinnati Railroad Co.* 1 Disney, 58, was a case that decides that under the Ohio code an assignee of a claim for damages resulting from injuries to personal or real estate may bring an action in his own name. *More* v. *Massini*, 32 Cal. 590, was a case wherein it was held that a claim for damage caused by a trespass on land is assignable. *Weire* v. *Davenport*, 11 Iowa, 49, was a case wherein it was held that a damage to realty is assignable. *National Exchange Bank* v. *McLoon*, 73 Me. 498, was a case which held good an assignment by an heir of the owner of a ship destroyed by the "Alabama," of his claim against the United States for such destruction. *Fried* v. *New York Central Railroad Co.* 43 N. Y. Sup. 1, holds that the right of action for carelessly and negligently setting fire to and burning up grass, fences and hay upon a farm is assignable. *Vimont* v. *Chicago and Northwestern Railway Co.* 64 Iowa, 513, was a case in which there was an assignment of the right of action for personal injuries to a resident of Iowa by a non-resident, and the question arose as to the validity of the assignment, on a motion to transfer the case to the United States court, and the court held such assignment was good, on the strength of *Gray* v. *McAllen*, 4 Iowa, 497. *Zagbaum* v. *Parker*, 66 Barb. 341, was a case of false imprisonment, where there was an agreement to secure services by the assignment of a verdict, and the agreement was held good. This is under the New York code, under which champerty and maintenance do not exist. *Brady* v. *Whitney*, 24 Mich. 154, was an action in trover brought by a purchaser of a melodeon

after the conversion, and the question was whether this sale constituted an assignment of the right to sue, and the court held that a right of action in trover is assignable. *Grant* v. *Ellis*, 26 Mich. 201, was a case holding that an action in trover for converting timber is assignable. *Finn* v. *Corbit*, 36 Mich. 318, was a case holding that a right of action for trespass to property is assignable. *Final* v. *Backus*, 18 Mich. 218, was a case in which the court holds that a right of action for conversion of logs is assignable. In *Brackett* v. *Griswold*, 103 N. Y. 425, the question involved was whether a cause of action growing out of a false annual report by a trustee, affecting a creditor and giving him an action under the statute, died with the creditor, and it was held that it did. This question was joined with a charge of conspiracy to cheat and defraud, and it was held this affected a property right, and survived. *Stewart* v. *Houston and Texas Central Railway Co.* 62 Tex. 246, was a case in which it was held that an unliquidated claim for personal injury cannot be assigned by the party injured, in Texas. The court approves *Railroad Co.* v. *Freeman*, 57 Tex. 156, and holds, as there was no survival, there could be no assignment of the action for personal injuries. In the *Freeman case, supra,* the question involved was, whether a claim against a railroad company for killing and injuring live stock could be assigned in equity, so as to enable the assignee to bring suit in his own name, and the court held that personal torts are not assignable, but that claims growing out of and adhering to property may be assigned. In *Choteau* v. *Boughton*, 100 Mo. 406, the question involved was, whether a right of action for trespass to realty was assignable; and the court held that it was, and followed the case of *Schneider* v. *Wabash, St. Louis and Pacific Railroad Co.* 86 Mo. 613. This latter case was an action brought against a railroad company for killing a hog which had strayed through a defective fence, and it was held that such a right of action might be assigned, as it would survive the death of the owner under the code.

All these cases—and many others might be cited—sustain the principle that causes of action for injuries to property, real or personal, by which an estate is diminished, are generally assignable. On grounds of public policy the sale or assignment of actions for injuries to the person are void. The law will not consider the injuries of a citizen, whereby he is injured in his person, to be, as a cause of action, a commodity of sale. On other grounds assignability is not legal.

In the discussion of the question of assignability of causes of action for torts, courts have usually based their decisions on the theory that where a cause of action survived it was assignable. Is that the sole test? Bispham, in his Principles of Equity, (pp. 218, 219,) states: "So, too, equity will not recognize assignments of certain species of property which it would be against the policy of the law to allow the owners to part with. These are, pensions given as rewards for extraordinary services, pay or half pay in the army, the salaries of judges, and other revenues and emoluments of a kindred character, which reasons of State require should remain always for the benefit of the person to whom they were originally given. * * * Yet in all these cases any balance unpaid at the time of death would survive to the personal representative. But the right of assignment is precluded on principles of public policy."

Pomeroy, in his work on Equity Jurisprudence, (sec. 1275,) says: "It becomes important, then, in fixing the scope of the equity jurisdiction, to determine what things in action may thus be legally assigned. The following criterion is universally adopted: All things in action which survive and pass to the personal representatives of a decedent creditor as assets, or continue as liabilities against the representatives of a decedent debtor, are, in general, thus assignable; all which do not thus survive, but which die with the person of the creditor or of the debtor, are not assignable. The first of these classes, according to

the doctrine prevailing throughout the United States, includes all claims arising from contract, express or implied, with certain well defined exceptions, and those arising from torts to real or personal property, and from frauds, deceits and other wrongs, whereby an estate, real or personal, is injured, diminished or damaged. The second class embraces all torts to the person or character where the injury and damage are confined to the body and the feelings, and also those contracts, often implied, the breach of which produces only direct injury and damage, bodily or mental, to the person, such as promises to marry, injuries done by the want of skill of a medical practitioner contrary to his implied undertaking, and the like, and also those contracts, so long as they are executory, which stipulate solely for the special personal services, skill or knowledge of a contracting party."

Here is a distinction clearly drawn between injuries to property and injuries to the person. This distinction rests on a sound principle. If a person receives injuries to his person through negligence of another, by our statute (sec. 123, chap. 3,) the action therefor survives. By chapter 70, where death results from such injuries caused by such negligence of another the action still survives, but is brought for the exclusive benefit of the widow and next of kin. The administrator cannot recover damages for the estate and at the same time recover for the exclusive benefit of the widow. Statutes like chapter 70 are in force in most of the States. May a person injured assign the cause of action immediately after his injury, and thus, in case of his death from that injury, legally bar a recovery by the administrator for the exclusive benefit of the widow and next of kin? The purpose of chapter 70 is to benefit the widow and next of kin. If an assignment on the basis of the survival of the action were the sole test, then in the case mentioned the assignment would be valid. But the very purpose of the survival, as created by the statute, is for the benefit of the

widow and next of kin, which purpose the law will not permit to be defeated. Whether the action be for assault and battery or for injuries caused by the negligence of another, still the same rule obtains, and the action is included in the term actions for injuries to the person. The possible result of the assignment of such an action would be that the purpose of the law might be defeated. Courts have with but one exception steadily held that an action for injuries to the body is not assignable. These actions did not survive at common law, and statutes providing for such survival have had their birth since the passage of Lord Campbell's act, in 1852, which, by chapter 70 of our Revised Statutes, is substantially adopted. If such actions are held assignable on the sole ground of survival, then an assignee in bankruptcy or for the benefit of creditors would take the cause of action.

This principle that actions for personal injuries are not assignable is well sustained by authority. In *Rice* v. *Stone*, 1 Allen, 568, it was held that an assignment of a claim for personal injuries is void, although made after verdict but before judgment in an action to recover damages for such injury. The court say: "Such claims were not assignable at common law. On the contrary, a possibility, right of entry, thing of action, cause of suit or title for condition broken, could not be granted or assigned over at common law. But this ancient doctrine has been greatly relaxed. Commercial paper was first made assignable to meet the necessities of commerce and trade. Courts of equity also interfered to protect assignments of various choses in action, and after a while courts of law recognized the validity of such assignments, and protected them by allowing the assignee to use the name of the assignor for enforcing the claim assigned, and at the present day claims for property and for torts done to property are generally to be regarded as assignable, especially in bankruptcy and insolvency. There may be exceptions to this doctrine, but they need not be discussed

here.   But in respect to all claims for personal injuries,
the questions put by Lord Abinger in *Howard* v. *Crowther*,
8 M. & W. 603, are applicable:   'Has it ever been con-
tended that the assignees of a bankrupt can recover for
his wife's adultery, or for an assault?   How can they
represent his aggravated feelings?'   And we may add
the broader inquiry, has any court of law or equity ever
sanctioned a claim by an assignee to compensation for
wounded feelings, injured reputation or bodily pain suf-
fered by an assignor?   There were two principal reasons
assigned why the assignments above mentioned were held
to be invalid at common law.   One was to avoid main-
tenance.   In early times maintenance was regarded as an
evil, principally because it would enable the rich and
powerful to oppress the poor.   This reason has in modern
times lost much, but not the whole, of its force.   It would
still be in the power of litigious persons, whether rich or
poor, to harass and annoy others if they were allowed
to purchase claims for pain and sufferings and prosecute
them in courts as assignees, and as there are no counter-
balancing reasons in favor of such purchases, growing
out of the convenience of business, there is no good ground
for a change of the law in respect to such claims.   The
other reason is a principle of law applicable to all as-
signments, that they are void unless the assignor has
either actually or potentially the thing which he attempts
to assign.   A man cannot grant or charge that which he
has not.   *   *   *   Most of the cases in which the right
to assign this class of claims has been discussed have
been assignments under the statutes of bankruptcy or
insolvency.   Much of the discussion has therefore related
to the construction of these statutes, but the nature of
the claims has also been regarded as an objection to their
being assignable.   In some cases the question has been
discussed without reference to such statutes.   In *Prosser*
v. *Edmunds*, 1 Younge & Coll. 481, it was said that a bare
right to file a bill in equity for fraud was not assignable.

Lord Chief Baron Lyndhurst remarked that courts of equity had relaxed the ancient rule as to the assignment of choses in action, 'but only in the case where something more than a mere right to litigate has been assigned.' This constitutes a very important limitation." This case was followed in *Linton* v. *Hurley*, 104 Mass. 353.

In *Coughlin* v. *New York Central and Hudson River Railroad Co.* 71 N. Y. 446, one having a claim against a railroad company for personal injuries accepted an offer from certain attorneys to take the claim for collection and divide the recovery. Afterward the railroad company, with notice of the attorneys' interest in the cause of action, settled with the claimant and secured a release. In holding that the release was a bar to the action for negligence, and that the attorneys could not demand that the action proceed so that they might have the benefit of their agreement, the court say: "So if the cause of action before judgment be in its nature assignable, the owner of it may assign, and, by agreement, create legal and equitable interests therein, and such agreements may now be made with his attorneys as well as with other persons, and when such interests have been created and notice given of them, they must be respected. But * * * when the cause of action is, like this, such as by its nature is not assignable, the party owning it cannot, by any agreement, give his attorney or other person any interest therein,"—citing *People* v. *Tioga Common Pleas*, 19 Wend. 73, and *Pulver* v. *Harris*, 62 Barb. 500. To the same effect is *Chicago and Alton Railroad Co.* v. *Maher*, 91 Ill. 312.

The only exception to this rule is the case of *Vimont* v. *Chicago and Northwestern Railway Co.* 69 Iowa, 296, which has been followed by other cases in that State. We do not think the reasoning on which these decisions are based is sound, and we decline to follow them.

The second proposition to be determined is, is a contract by which the person in whose name the action is brought and to whom it belongs, restricted from compro-

mising or settling such a claim because of a contract to that effect? In other words, is such a contract valid and binding? The law does not discourage settlements in cases for personal injuries. Whether a cause of action exists, and if so, its nature and amount, are facts always involved in uncertainty, and a defendant has a right to buy his peace. The plaintiff has a right to compromise, and avoid the anxiety resulting from a cause pending to which he is a party. Any contract whereby a client is prevented from settling or discontinuing his suit is void, as such agreement would foster and encourage litigation. *Lewis* v. *Lewis*, 15 Ohio, 715; *Elwood* v. *Wilson*, 21 Iowa, 523; *Foster* v. *Jacks*, 4 Wall. 334; Greenhood on Public Policy, 474; *Boardman* v. *Thompson*, 25 Iowa, 487; *Huber* v. *Johnson*, (Minn.) 70 N. W. Rep. 805.

We will not extend this opinion by a discussion of other questions raised. The decree of the Superior Court of Cook county and the judgment of the Appellate Court for the First District are each reversed and the cause is remanded, with directions to dismiss the bill.

*Reversed and remanded.*

Mr. JUSTICE CRAIG, dissenting:

As I do not agree with a majority of the court in this opinion, I have concluded to state my views of the case.

Where a decree *pro confesso* has been entered against a party, he cannot, on error, allege the want of testimony or the insufficiency of the evidence the court may have heard, but the party has the right to contest the sufficiency of the allegations of the bill and insist that the averments of the bill do not justify the decree. (*Gault* v. *Hoagland*, 25 Ill. 241.) By a demurrer all material allegations well pleaded are admitted. The same rule may be applied where there is a default. The question then presented by this record is, whether, conceding the averments of the bill to be true, they are sufficient to authorize the decree rendered by the court.

It is alleged in the bill that the complainant was an attorney at law; that Mary Butler had received certain personal injuries through the negligence of the defendant while she was exercising due care, the nature and character of which injuries were fully stated; that Mary Butler had a cause of action against said railroad company, and desired the services of the complainant as an attorney to prosecute her case against the railroad company; that thereupon a written contract was entered into, viz.:

"Whereas, on or about the seventh day of July, A. D. 1891, Mrs. Mary Butler received certain personal injuries through an accident caused by the negligence of certain employees of the North Chicago Street Railroad Company, and desires to enforce payment of damages for said injury without advancing attorney's fees therefor. It is agreed by and between said Mrs. Mary Butler and L. M. Ackley, attorney at law, that said Ackley shall take exclusive charge of said matter and prosecute such parties as he may deem liable for said injuries, and begin and prosecute diligently to final settlement such suits or legal proceedings as he may deem necessary, and shall receive for his services, under this contract, a sum equal to one-half the gross amount recovered or received on account of said injuries, and to secure payment of said fee the said Mrs. Mary Butler hereby assigns to said Ackley and his assigns one-half of said right of action, and agrees to assign in proper legal form, in writing, upon request, one-half of any verdict or judgment which may be had or recovered by reason of said accident and injury,—court costs and actual necessary expenses to be advanced by Mrs. Mary Butler, who also agrees not to compromise or settle said claim, or to have any dealings with any person in reference thereto other than said attorney. In the event of a settlement of said claim before the aforesaid case is on trial call, the charge for services shall be less than one-half, in proportion to the work done up to the

date of such settlement." (Signed and sealed by the parties September 2, 1891.)

It is then alleged that on the third day of September, 1891, Ackley commenced a suit in the circuit court of Cook county against the railroad company to recover damages for the injuries sustained, and for a period of two and one-half years complainant spent much time and rendered much service in preparing said cause for trial (setting out the services in detail); that finally the cause was reached on the calendar and complainant caused the same to be set down for trial; that while on the trial docket the railroad company, without the knowledge or consent of complainant, settled the cause with Mary Butler, procured the cause to be called up out of its order, and had a judgment entered thereon in favor of Mrs. Butler, against the railroad company, for $3750 and costs, which sum was paid to Mrs. Butler and she satisfied the judgment of record; that prior to the making of the said settlement and payment of $3750 to the said Mary Butler, said North Chicago Street Railroad Company had full knowledge and notice of said contract in writing, of the employment of associate counsel and of the services rendered as aforesaid, and of complainant's rights under said contract, and that the said settlement was made for the fraudulent purpose of preventing complainant from obtaining compensation for his work in behalf of said Mary Butler; that said North Chicago Street Railroad Company and said Mary Butler have each refused to pay to complainant the amount so due him for services, and said Mary Butler has informed complainant that she has none of the money so paid in settlement; that Mary Butler is, as complainant believes, wholly insolvent.

The rule seems to be quite well established by the authorities, leaving out of view questions of public policy, that all causes of action which, under the law, survive, are assignable. The test, therefore, by which to determine whether things in action are assignable, seems to be

to ascertain whether the claim or demand survives upon the death of the party or dies with him.

In *North* v. *Turner*, 9 S. & R. 244, which was an action of trespass for carrying away goods, the plaintiff was offered as a witness. The objection was interposed that he was interested and incompetent, to which it was replied that he had assigned his claim, and the court held that as the right of action, under the statute, passed to the personal representatives, it was assignable. In the decision of the case the court said: "Undoubtedly there are some injuries which so peculiarly adhere to the person of him who has suffered them as to preclude an assignment of his claim for compensation for them, as to make him a witness,—such, for instance, as slander, assault and battery, criminal conversation with the party's wife, and many others that might be mentioned. The right to compensation for any of these would not pass by a statute of bankruptcy or an assignment under the insolvent acts, nor could it be transmitted to executors or administrators. But this does not hold with respect to a trespass committed against the party's goods, the remedy for which survives to the personal representative by the statute 4 Edward III, chap. 7, which clearly shows that such cause of action is separate from the person of the owner. * * * The subject matter of the demand, therefore, being clearly assignable, the objection on that ground cannot be maintained."

*Bunker* v. *Green*, 48 Ill. 243, was an action of trespass *de bonis asportatis*, pending which plaintiff died, and it was held that the cause of action survived under the statute 4 Edward III, chap. 7, and that the personal representative might be substituted as plaintiff.

Moreover, actions for personal injuries survive under paragraph 122 of our statute entitled "Administration of Estates," which declares: "In addition to the actions which survive by the common law the following shall also survive: Actions of replevin, actions to recover

damages for an injury to the person, (except slander and libel,) actions to recover damages for an injury to real or personal property or for the detention or conversion of personal property, and actions against officers for misfeasance, malfeasance or nonfeasance of themselves or their deputies, and all actions for fraud or deceit." See, also, Hurd's Stat. chap. 70, p. 861.

In *Tyson* v. *McGuinness*, 25 Wis. 656, which was an action of trespass, it was held that all actions of tort which survive may be assigned. The same rule is announced in *Jordan* v. *Gillen*, 44 N. H. 424.

Pomeroy on Remedies and Remedial Rights (sec. 146) says: "Whatever things in action will survive and pass to the personal representatives of a decedent as assets of or liabilities against an estate, are assignable by the direct act of the parties, while those things in action which will not thus survive and pass to the personal representatives of a decedent are not assignable." And in section 147: "The criterion, therefore, by which to judge of the assignability of things in action is to ascertain whether the demand survives upon the decease of the party or dies with him."

Under the authorities cited it seems plain that a right of action for personal injuries is assignable. *Hawk* v. *Ament*, 28 Ill. App. 390, is a case in point. There, as appears, Hawk had been injured on a railroad and claimed damages for his injury, and, being anxious to institute an action against the railroad company, he entered into a contract with one Ament, a lawyer, to give him one-half of whatever amount might be recovered, for his services in commencing and prosecuting the action. Ament commenced a suit against the railroad company and recovered a judgment in the circuit court for $1900. The railroad company appealed to the Appellate Court, where the judgment was affirmed. The company then appealed from the judgment of the Appellate Court to this court, where the judgment was ultimately affirmed. While the

cause was pending in this court Hawk sold and assigned the judgment, in writing, to one O'Connor, and after the judgment was affirmed in this court the judgment was paid to the clerk of the circuit court where it was rendered. O'Connor claimed the money and the attorney claimed one-half of the judgment under the agreement he had with Hawk. The Appellate Court sustained the agreement Ament made with Hawk, and held that the agreement amounted to an equitable assignment.

In *Vimont* v. *Chicago and Northwestern Railway Co.* 69 Iowa, 296, the Supreme Court of Iowa held that a cause of action for a personal injury was assignable and the assignee might maintain an action in his own name. It is there said: "It may be conceded for the purposes of this case, that a claim for damages arising out of a personal tort, and having its origin where the common law·is in force, is not assignable before being reduced to judgment. The ground upon which it is held that such claim is not assignable is, that it is a mere personal claim in favor of the injured party, and that it does not become a part of his estate or descend to his representatives, but terminates at his death, and consequently it has no value which can be so estimated as to form a consideration for a sale, and there is in it no element of property to make it the subject of a grant or assignment. (See *Rice* v. *Stone*, 1 Allen, 566; *People* v. *Tioga Common Pleas*, 19 Wend. 73.) The contract of assignment of such claims between parties otherwise competent to contract is void at common law, then, not because of any incapacity of the parties to enter into the contract, but because the claim itself is not the subject of contract. Under the statutes of Iowa, however, such claims are given a character entirely different from that sustained by them when arising under the common law. They are not merely personal claims in favor of the parties sustaining the injuries, and they do not terminate with their death but become part of their estates and descend to their representatives, and actions thereon

may be maintained by the representatives." See, also, 21 N. W. Rep. 9.

In *Final* v. *Backus*, 18 Mich. 218, where trover was brought to recover for logs which the defendant had obtained by trespass, the court, in deciding the case, said: "The position is, that the right of action for a tort is not the subject of assignment; and this we understand to be the general rule (citing authorities). But this rule applies only to those torts which are merely personal, and which, on the death of the person wronged, die with him; while torts for taking and converting personal property or for an injury to one's estate, and generally all such rights of action for tort as would survive to the personal representatives, may, it seems, be assigned so as to pass an interest to the assignee which he can enforce by suit at law,"—citing *North* v. *Turner*, 9 S. & R. 244, *Butler* v. *Railroad Co.* 22 Barb. 110, and *Purple* v. *Hudson River Railroad Co.* 4 Duer, 79.

Numerous cases have been cited by counsel for the railroad company which they claim hold a different view— that a right of action for personal injuries is not assignable. The first case cited is *Chicago and Alton Railroad Co.* v. *Maher*, 91 Ill. 312. In that case one Maher owned certain property on the Chicago river, and while so owning the property the railroad company erected a pier in the river opposite his property, upon which a bridge was constructed. Some time after the erection of the pier Maher sold the property to his wife, and after she obtained title she sued to recover damages caused by the erection of the pier. It was held that as Maher owned the land when the pier was erected which caused the alleged damage, the right of action was in him, and the right to sue for damages was not transferred to his wife by the subsequent conveyance to her. Expressions may be found in the opinion in that case which might seem to sustain the view of appellant, but the decision in that case has no bearing on the question involved in this. The theory of that case is,

that the owner, at the time of the damage, is entitled to recover not only for the present but all future damages, and a recovery by the owner is a bar to any future action. *Norton* v. *Tuttle*, 60 Ill. 130, has also been cited. In that case it was held that the bare right to file a bill in equity, growing out of the perpetration of a fraud on a party, is not assignable. *Prosser* v. *Edmunds*, 1 Y. & C. 481, and *Illinois Land and Loan Co.* v. *Speyer*, 138 Ill. 137, lay down the same doctrine. *Rice* v. *Stone*, 1 Allen, 566, has also been cited and is much relied upon. In that case the Supreme Court of Massachusetts did hold that at common law a claim for injuries to the person is not assignable. *Coughlin* v. *Railroad Co.* 71 N. Y. 444, has also been cited, but in New York, at the time the case was decided, a right of action to recover damages for personal injuries did not survive. A few other cases have been cited but it will not be necessary to refer to them here.

It may be conceded that there are cases, as *Rice* v. *Stone* and *People* v. *Tioga Common Pleas, supra*, which hold that a cause of action for personal injuries is not assignable, but I regard the decided weight of authority the other way. If the cause of action in the case under consideration was merely personal,—one which would not survive the party injured, but would die with him,—I would have no hesitation in holding, as was done in *Rice* v. *Stone* and *People* v. *Tioga Common Pleas, supra*, that the cause of action could not be assigned to a third party. But such is not the case. Under our statute, as has been seen, an action to recover damages for personal injuries survives, and being possessed of that important element no reason is perceived why an action of that character may not be assigned in the same way and with like effect as an action of debt composed of various items, or as an·action to recover damages for breach of contract.

I do not wish to be understood as saying that an assignee of a cause of action for personal injuries, or any other tort, may maintain an action in his own name, but

I do say that the cause of action may be transferred by assignment, so that the assignee may be the equitable owner of the cause of action, with power to prosecute to final judgment in the name of the assignor, and collect and receipt for the judgment when rendered.

It is also claimed that the agreement sought to be enforced violates the rule against maintenance and champerty.   It will be observed that by the terms of the contract the attorney, Ackley, was to receive for his services one-half of the amount to be recovered, but by the express terms of the agreement court costs and necessary expenses were to be advanced by Mary Butler.   To make out a case of champerty it is not sufficient to show that a part of the thing recovered was paid or agreed to be paid as an attorney's fee.   It must also be shown that the costs and expenses of the suit, or some part of them, are paid or agreed to be paid by the attorney.   (*West Chicago Park Comrs.* v. *Coleman,* 108 Ill. 591.)   This is the rule established in the case cited and also in *Thompson* v. *Reynolds,* 73 Ill. 11, and *Phillips* v. *South Park Comrs.* 119 id. 626. Under the law as declared in these cases the objection to the contract is, in my opinion, not well taken.

It is said in the argument that the agreement is not an assignment of any part of the fund to be recovered, but is a mere promise to pay a sum equal to one-half of the amount recovered.   I do not so regard the contract. The contract is one, as I understand it, by which an equitable assignment is made of one-half of whatever amount may be recovered.   When the judgment was rendered the railroad company had notice of appellee's rights in the judgment, and having paid over the money to Mary Butler with notice of appellee's rights, it was, in my opinion, liable to appellee for the amount of his interest in the judgment.

Mr. JUSTICE MAGRUDER:   I concur in the views expressed by Mr. Justice CRAIG.