GEORGE W. GRIFFITHS, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 82624.   Promulgated February 9, 1938.

*Herman A. Fischer, Esq.*, for the petitioner.
*C. H. Curl, Esq.*, for the respondent.

OPINION.

MURDOCK: It seems desirable to review briefly some past events before discussing the transactions which give rise directly to the issues in this proceeding. Lay originally prevailed upon the petitioner to purchase the 5,000 shares of Oakridge Cemetery Corporation stock for $100,000. Thereafter, the petitioner sold the stock to the John W. Griffiths Investment Trust and sustained a loss of $92,500. A deduction of that amount was claimed and allowed on his income tax return for 1931. The petitioner learned late in 1932

that, because of something which Lay had done in the first transaction, a part, or all, of the loss might be recovered from Lay. The petitioner repurchased the stock from the John W. Griffiths Investment Trust in 1933 for $8,000. No question whatsoever is raised as to the propriety for income tax purposes of any of the transactions thus far described. Negotiations for the settlement with Lay had progressed to the point where the parties were all ready to close the transaction. The petitioner was then advised by his attorney of a method whereby he might possibly save himself from the payment of some income taxes. The steps taken to minimize the taxes are the ones and the only ones which give rise directly to the issues in this case.

The following steps were all taken upon the advice of the petitioner's counsel. The G. W. G. Corporation was formed. The process of incorporation began on the 9th of January and was completed early on the 10th. Resolutions theretofore prepared in blank were adopted by the corporation. These authorized the corporation to purchase from the petitioner the stock and the right of action. A contract of sale was executed whereby the G. W. G. Corporation became the legal owner of the stock and the right of action against Lay. The petitioner was authorized to make the settlement with Lay in his own name on behalf of the corporation. The settlement with Lay was completed on January 11 by the petitioner in his own name. The record does not show that Lay or his attorneys were advised of the sale to the corporation. The petitioner deposited to the account of the G. W. G. Corporation the $100,000 which he received from Lay.

The petitioner contends that in the settlement with Lay and in depositing the $100,000, he acted as agent for the G. W. G. Corporation, his undisclosed principal. The Commissioner has ignored the G. W. G. Corporation and has treated the transaction as if the petitioner had never sold the stock to the corporation, but had acted entirely for himself throughout the settlement with Lay. Counsel for the respondent contends before the Board that the G. W. G. Corporation should be ignored. His contention is not supported by any showing that the sale from the petitioner to the G. W. G. Corporation did not take place or that it was in any respect illegal. He makes no showing that the petitioner acted for himself rather than as agent for the G. W. G. Corporation in concluding the settlement with Lay. He contends that the "mission" of the G. W. G. Corporation was "sinful" and that its intervention was a "nefarious tax evasion scheme", but such statements do not help to decide the case. He relies upon the case of *Gregory* v. *Helvering*, 293 U. S. 465, and upon the case of *Bus & Transport Securities Corporation* v. *Helvering*, 296 U. S. 391. Those cases dealt with the reorganization provisions of

the statute and are not in point here, where the petitioner seeks to apply none of those provisions.

This is another case involving a wholly owned corporation. It requires careful scrutiny to see if there is any sufficient reason to disregard the corporate entity, which normally under the law must be recognized as a separate taxpayer from the petitioner. It is not fatal in such cases that the corporation was used deliberately to minimize income taxes. Here one taxpayer, the petitioner, made an actual bona fide sale to another. His income tax liability arises under that transaction rather than as a result of the settlement with Lay. This new corporation continued to exist, as indeed was necessary in order to carry out the installment sale contract. It paid a salary and dividends to the petitioner, which he reported in his income tax return. It paid him interest on the unpaid purchase price, which he may have reported on his income tax return. The Commissioner has not eliminated the salary and interest, as should be done if the separateness of the corporation is to be ignored. The steps taken and the reality of the corporation can not be disregarded. Cf. *Chisholm* v. *Commissioner*, 79 Fed. (2d) 14, reversing 29 B. T. A. 1334; *Grand Rapids Trust Co. et al., Administrators*, 34 B. T. A. 170; *Seymour H. Knox*, 33 B. T. A. 972; *Marjory Taylor Hardwick*, 33 B. T. A. 249; *Edwards Securities Corporation*, 30 B. T. A. 918; affd., 83 Fed. (2d) 1007; *James E. Wells*, 29 B. T. A. 222; *David Stewart*, 17 B. T. A. 604; *Rands, Inc.*, 34 B. T. A. 1094; *Ralph Hochstetter*, 34 B. T. A. 791; *William H. Albers*, 33 B. T. A. 373; *A. S. Eldridge*, 30 B. T. A. 1322; affd., 79 Fed. (2d) 629; *Jones* v. *Helvering*, 71 Fed. (2d) 214; *Commissioner* v. *McCreery*, 83 Fed. (2d) 817.

This petitioner had sold and transferred his stock and the claim against Lay before the settlement with Lay had reached the stage where it had any income tax significance. That taxpayer, the G. W. G. Corporation, became entitled to the $100,000 paid by Lay as a settlement. The petitioner was not entitled to the $100,000 and the gain from the transaction can not be taxed to him. He correctly reported on the installment basis his gain for 1933 from the sale to the corporation.

The respondent, to sustain his burden of proof on the fraud issue in this case, relies entirely upon the circumstances of the transaction already discussed. He claims that the use of the corporation is evidence that a part of the deficiency is due to fraud with intent to evade tax. Since the additional income was not properly included by the Commissioner, it follows that no fraudulent intent can be drawn from the use of the G. W. G. Corporation. But even if the petitioner were to lose on the income issue, nevertheless he would still win on the fraud issue because the record fails to indicate any fraudulent intent on his part. He made no effort to conceal the true facts and

circumstances from the Commissioner. He acted upon the advice of counsel and, apparently, in the honest belief that it was proper under the revenue act. The Commissioner must make a stronger showing than he has done in this case to support the charge of fraud.

Reviewed by the Board.

*Decision will be entered under Rule 50.*

---

MELLOTT, dissenting: The opinion of the majority holds that on January 10, 1933, there was a sale of the securities by the trust to the petitioner for $8,000, an immediate sale on the installment plan of the same securities by the petitioner to his newly created corporation for $100,000, followed by a sale by the corporation, as an undisclosed principal through petitioner as its agent, to Lay for $100,000. I can not accept this view.

A substantial portion of the sum paid by Lay was paid because of petitioner's claim against him for fraud. In this connection the testimony of the lawyer who handled the transaction for the petitioner is illuminating. He said:

> I told Mr. Griffiths that our rights against Lay consisted of a cause of action involving a breach of trust in the general nature of a tort claim, and that in order to effect the settlement it would be necessary to unite the ownership of the stock and the tort claim, or claim for breach of trust, in the same person. I therefore told him it would be essential for him to reacquire the stock that had been sold to the John Griffiths Investment Trust, and he said he would.

The petitioner testified to the same effect. He stated that the attorney told him "that in order to clean it up I should buy the stock back from the Investment Trust because of my right of action against Lay, and I believe Lay's attorney wanted it that way because the Investment Trust only had the stock and I had the right of action."

While petitioner assigned to the corporation any rights which he might have against Lay to require him "to purchase said stock" it is significant that no attempt was made to assign to the corporation his "cause of action involving a breach of trust in the nature of a tort claim, or claim for breach of trust." Perhaps such claim was not assignable under the laws of Illinois. Cf. *Babcock* v. *Farwell*, 146 Ill. App. 307; affd., 245 Ill. 14; 91 N. E. 683; *North Chicago St. Ry. Co.* v. *Ackley*, 171 Ill. 100; 49 N. E. 222. But even if it were assignable it is significant that Lay was not advised that any assignment had been made and the release was executed by petitioner personally rather than on behalf of the corporation. The release recited that:

> * * * as part consideration for the payment to the undersigned by the said ROBERT D. LAY of the said sum of One hundred eighty thousand dollars ($180,000), I, the undersigned, GEORGE W. GRIFFITHS, for myself, my heirs, ad-

ministrators and assigns, do hereby release and forever discharge the said ROBERT D. LAY, his heirs, executors, administrators, and assigns, from all actions, causes of action, contracts, debts, liabilities, obligations, suits, claims and demands whatsoever which I, the undersigned ever had, now have, or which I, my heirs, executors, administrators or assigns or any of them, hereafter can, shall or may have for or by reason of any act of omission, cause, matter or thing whatsoever, from the beginning of the World to the date hereof.

The conclusion is inescapable that the major portion of the consideration paid by Lay was for the settlement of the tort action. Under the circumstances I am of the opinion that it constituted income to petitioner. The corporation set up by him was devised merely for the purpose of preventing the amount "paid from vesting even for a second in the man who" was entitled to receive it and the whole transaction is simply an attempt to attribute the fruits "to a different tree from that on which they grew." *Lucas* v. *Earl*, 281 U. S. 111.

In addition, I am of the opinion that the principle recognized and applied by the court and the Board in connection with the sale of property by the S. A. MacQueen Co. is clearly applicable. See *S. A. MacQueen Co.*, 26 B. T. A. 1337; affd., 67 Fed. (2d) 857. In that case the corporate owner of real estate had entered into an agreement to convey it to a purchaser for $150,000. The three stockholders of the corporation authorized the conveyance of the property to its president for a lesser sum and he executed a declaration of trust declaring his intention to distribute the profits to the stockholders in proportion to their holdings. The trust was carried out and the profit, being the difference between the sum paid by the president to the corporation and the sum received by him from the sale of the property, was distributed to the stockholders. It was held that substance and not form should control; that although in form there were two sales of the corporate real estate, in substance the transaction was a sale by the corporation through the agency of its president; that the obvious purpose of the procedure was to avoid the payment of tax and, under the facts, that the profit should be taxed to the petitioner.

Under the facts before us, I think finding should be made that although in form there was a sale by the corporation to Lay, in substance the transaction was a sale by the petitioner, through the agency of the corporation, of securities owned by him, contemporaneous with the settlement by him of his tort action against Lay. "A given result at the end of a straight path is not made a different result because reached by following a devious path." *Minnesota Tea Co.* v. *Helvering*, 302 U. S. 609. Cf. *Shoenberg* v. *Commissioner*, 77 Fed. (2d) 446; certiorari denied, 296 U. S. 586.

ARUNDELL, SMITH, TURNER, ARNOLD, and HARRON agree with this dissent.